HENRIETTA ROLOFF, Admx., Defendant in Error, *vs.* THE
    LUER BROTHERS' PACKING AND ICE COMPANY, Plain-
    tiff in Error.

*Opinion filed April 23, 1914.*

1. NEGLIGENCE—*what is not an ordinary risk of business of a
painter in an ice-making plant.* The risk of tripping or stumbling
over the bed-plate of an ice machine and falling in such a manner
as to be caught under the crank-shaft of the machine is not a risk
ordinarily incident to the employment of a painter or whitewasher
in the ice-making plant, and if such risk is to be held to be as-
sumed it must be upon the theory that the employee had worked
in the vicinity of the ice machine for a sufficient length of time to
have acquired knowledge of its construction and operation.

2. SAME—*term "preponderance of the evidence" does not need
to be defined.* The term "preponderance of the evidence" is well
understood without being defined, and while it would not be im-
proper to give an instruction defining such term it is not reversible
error to refuse it.

3. The court reviews the evidence in this case at length, and
holds that the questions of contributory negligence and assump-
tion of risk were questions of fact for the jury and have been con-
clusively settled by the judgment of the Appellate Court.

WRIT OF ERROR to the Appellate Court for the Fourth
District;—heard in that court on appeal from the Cir-
cuit Court of Madison county; the Hon. L. BERNREUTER,
Judge, presiding.

WISE, KEEFE & WHEELER, for plaintiff in error.

C. H. BURTON, and MERRITT U. HAYDEN, for defend-
ant in error.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the
court:

Defendant in error, Henrietta Roloff, administratrix of
the estate of William J. Roloff, deceased, brought an action
on the case in the circuit court of Madison county against
the Luer Brothers Packing and Ice Company, the plaintiff

in error, to recover for the death of William J. Roloff, which, it was alleged, was occasioned by the negligence of plaintiff in error. A trial before a jury resulted in a verdict for $6247.22 in favor of the plaintiff, and judgment was rendered upon this verdict. Plaintiff in error prosecuted an appeal to the Appellate Court for the Fourth District, where the judgment of the circuit court was affirmed. A writ of *certiorari* was thereafter granted by this court, and the record has been brought here for review.

The declaration in the case consisted of four counts, each of which alleged that on May 7, 1908, the plaintiff in error was possessed of and operating a packing plant in the city of Alton, and that William J. Roloff, the deceased, was then in the employ of plaintiff in error, engaged in the business of whitewashing and painting in the various rooms of said plant; that said plant contained a large amount of machinery, including a certain Ball ice machine, which was located in the engine room of the plant; that in the performance of his duties Roloff was required to use a scaffold and to move the timbers and planks thereof from place to place and from room to room as the work progressed; that on the day above mentioned, while Roloff, in the exercise of due care for his own safety, was attempting to move the planks and timbers of the scaffold from one part of the plant to another part he fell upon and was thrown under the crank-shaft of the Ball ice machine and was instantly killed. The negligence charged in the first count was, that the plaintiff in error failed to place a guard or railing or other like appliance around the crank-shaft; that charged in the second count was, that plaintiff in error failed to furnish proper and sufficient light in the engine room; that charged in the third count was, that plaintiff in error failed to furnish sufficient help to assist Roloff in moving the planks and timbers of the scaffold from room to room; and that charged in the fourth count was, that plaintiff in error negligently ordered and directed

Roloff to carry the planks and timbers along a narrow passageway, which brought him into dangerous proximity to the ice machine, which was in rapid motion. To this declaration the general issue was interposed and the cause proceeded to trial upon these pleadings.

The evidence shows that plaintiff in error, on the day mentioned in the declaration, was engaged in operating a packing and ice manufacturing plant in the city of Alton, and that some time prior to that date Roloff had been employed by plaintiff in error to paint and whitewash the walls and ceilings of the various rooms and certain appliances therein. The business of plaintiff in error was conducted in a large building consisting of various rooms. Among those were two rooms in which certain engines and machines were operated. One of these rooms was referred to by the witnesses as the old engine room and the other as the new engine room. The old engine room was about thirty feet square, and the new engine room was about thirty feet wide from east to west and sixty feet long from north to south. The old engine room was located immediately west of the north half of the new engine room and was connected therewith by a large opening, sixteen feet eleven inches in width and fourteen feet six inches in height, in the partition wall. When this opening was cut through the partition wall there were left standing about four feet of the partition wall at the north end and about ten feet at the south end. Beginning near the north-west corner of the new engine room an iron stairway extended east along the north wall up to the condensing room above. This stairway was twenty-seven inches wide, and on its south side had a gas-pipe railing, which was two feet eight inches above the stairs. An ammonia pipe, about seven feet from the floor, extended from the old to the new engine room through the large opening between those rooms, and this pipe was supported by an upright timber resting on the floor and standing in the large opening, about eight feet

from the north wall. The old engine room contained certain engines and machines, the number and location of which do not clearly appear from the evidence. The location of two engines, however, is fixed about two feet west of the large opening between the engine rooms. The Ball ice machine referred to in the declaration was in the new engine room. It consisted of an engine and an ammonia compressor. The engine was the west portion of the machine and the compressor the east portion. Between the engine and compressor, and seven or eight feet from the west side of the engine, was a large fly-wheel, which revolved at the rate of about forty-five revolutions per minute. The crank-shaft connected with this fly-wheel was on the west side of the engine and near the north end thereof. The engine was about twenty feet long from north to south. It sat on a concrete foundation, which was level with the floor of the engine room. A base-plate fifteen inches in width extended along the entire west side of the engine. The north three or four feet of this base-plate was twelve inches above the floor, and the balance inclined upwards towards the south until it reached a height of about four feet at the south end of the engine. The crank-shaft operated just inside of this base-plate. The west side of the engine was about three and one-half feet from the large opening and the south portion of the partition wall, and the north end of the engine was about three feet from the stairway above mentioned. Roloff was killed about half-past eleven o'clock in the morning of May 7, 1908. He had just finished his work of painting and whitewashing in the old engine room, where he had been engaged for several days, and was in the act of moving the scaffold on which he worked from the old engine room to the stairway leading up from the new engine room to the condensing room.. The planks used in constructing the scaffold were two inches thick, nine inches wide and fourteen feet long, and weighed about fifty pounds each. Roloff had taken

two of the planks from the old engine room and placed them upon the stairway, and was engaged in moving the third and last plank from the old engine room to the stairway when he was killed. The manner in which he carried the first two planks to the stairway is not disclosed. The evidence shows that the last plank, just before Roloff started to move it, was on the floor, the greater portion being in the old engine room, south of the large opening above mentioned, and a small portion extending in a north-easterly direction through the opening into the new engine room; that Roloff, facing west, picked up the plank and walked backwards in a north-easterly direction, and in so walking came in contact with that portion of the base-plate of the engine which was twelve inches above the floor and fell backwards, in a sitting posture, upon the base-plate, with the plank across his lap, and was almost instantly thereafter struck by the crank-shaft and killed. There was also evidence tending to show that by order of plaintiff in error no lights were burning in the engine room at the time of the accident, notwithstanding it was a dark, cloudy day and objects could not be clearly discerned in the engine room without artificial light. The evidence further shows that Roloff had about a month previous painted a tank which stood in the north-east corner of the new engine room, and that this was the only work that he had ever performed in that room.

At the close of the plaintiff's case, and again after all the evidence had been introduced, plaintiff in error offered a peremptory instruction directing a verdict in its favor. The court refused the instruction, and this action of the court is the principal ground relied upon for reversal.

It is not contended that the evidence does not tend to prove the negligence complained of in the first and second counts of the declaration, but plaintiff in error relies for reversal upon the ground (1) that the death of Roloff was occasioned by his own contributory negligence, and (2) that

Roloff had assumed the risk. In the view we take of the case both of these matters were questions of fact to be determined by the jury and are now conclusively settled by the judgment of the Appellate Court.

It does not clearly appear from the evidence how frequently the deceased had been in the new engine room or how long he had been employed in whitewashing the old engine room. At one time, about a month previous to the accident, he had painted a small tank in the new engine room. The time that he had been engaged in whitewashing the old engine room, just previous to the accident, is variously estimated by the witnesses. It is fair to infer from the testimony that he was engaged in this task two or three days. Whether during that time he ever had occasion to go from the old to the new engine room does not appear. While it is true there was this large opening between the two rooms, the work of the deceased was of such a nature that he was not required to give any attention to the work being done in the new engine room or to any of the machinery there. If the light was sufficient he could have observed from the old engine room the character and location of the machinery in the new room had he chosen to do so. It is impossible to determine from the record the exact situation with reference to the fixed objects in the old and new engine rooms at the time of the accident. This is occasioned by the fact that a plat of these rooms and the fixtures located therein was exhibited before the jury and was referred to by the various witnesses in such a way as to make their testimony largely unintelligible without the assistance of the plat. This plat was not offered in evidence and is therefore not before us. It does appear from the evidence that in the old engine room there were two engines, which came within a short distance of the opening between the two rooms, and that one of these engines was in operation at the time of the accident.

The various witnesses who were familiar with the situation in the two engine rooms at the time of the accident testified fully, from the plat, as to the location of all fixed objects contained in the rooms, and the jury were therefore better informed than we can be from this record, and without having the plat before us, regarding the obstacles which Roloff would encounter and would be required to avoid in carrying the plank from the old engine room to the stairway. Plaintiff in error's engineer, who was called as a witness by defendant in error, after testifying that there was a space of several feet between the engines in the old engine room and the Ball ice machine in the new engine room, was asked, on cross-examination, why Roloff could not have taken the plank through this space directly to the stairway, in response to which he answered: "When he took the board down he could not come towards the stairway. In one corner it caught the compressor and the ammonia pipe and he couldn't get past that, and if he went forward he pinned himself in the corner and he couldn't get up the stairway." On his re-direct examination he was requested to take a plank which was in the court room and give a physical demonstration before the jury of the method which would have to be adopted to carry a plank from the old engine room to the stairway. Thereupon the witness gave the physical demonstration, and, as the abstract shows, in connection therewith testified as follows, all without objection: "The man has to take his boards over in front and he has got to swing around to get it up the stairway, and in order to do that he has got to back up. If he took it this way he would pin himself in the corner and he couldn't get to the stairway." It was therefore purely a question of fact, to be determined by the jury from all the testimony, whether the deceased adopted the most feasible or practical method of doing his work, and whether he was guilty of contributory negligence in endeavoring to remove the third plank from the old engine room to the stairway

at the north end of the new engine room by standing with his back to the east, picking up the plank and walking backwards and sideways, and thus attempting to get the plank through the opening east of the support to the ammonia pipe, under the ammonia pipe and over the railing of the stairway.

The deceased was employed by the plaintiff in error as a painter and whitewasher. His duties were in nowise connected with the operation of the Ball ice machine or of any of the other machinery in the plant. The risk of tripping over or stumbling against the bed-plate of this machine and falling in such a manner as to be caught by the crank-shaft was not a risk ordinarily incident to the occupation in which he was engaged. The only theory upon which it could be held that he assumed this risk was, that the danger was obvious and he had worked in the vicinity of this engine or had had occasion to observe it for a sufficient length of time to be held to have become fully acquainted with its construction and operation, and that he fully understood and comprehended the danger of working in proximity to it when it was being operated. Whether the deceased had this knowledge was a question of fact, and the burden of proving that he did not possess it rested upon the defendant in error. The evidence tends to prove that the deceased had little or no occasion to observe the construction or operation of the Ball ice machine; that the room in which this machine was located was dimly lighted, and that on dark and gloomy days it was difficult to discern objects in the room; that at the time the accident occurred the day was cloudy, rainy and gloomy, and that after the accident it was necessary to turn on the electric lights in the room before those present could see to remove the body of the deceased from the crank-shaft pit. Under these circumstances it cannot be said, as a matter of law, that the deceased assumed the risk. The court was warranted in submitting this question to the jury.

Complaint is made of the ruling of the court on the admission of testimony, but we find no error in this regard.

The defendant in error offered no instructions. The court gave all the instructions offered on behalf of plaintiff in error except one, which consisted of a definition of the term "a preponderance of the evidence." While this instruction was proper and should have been given, we do not regard the error in refusing to give it of sufficient gravity to warrant a reversal. The jury were told that defendant in error must prove her case by "a preponderance of the evidence." These words do not have such a strict technical meaning as to require a definition. Their use is so common and their meaning so well understood that it cannot be seriously contended that men of ordinary intelligence would fail to comprehend them.

Finding no reversible error in the record the judgment of the Appellate Court is affirmed.    *Judgment affirmed.*