Larry A. Burnett, Plaintiff-Appellant, *v.* Harvey Caho *et al.*,
Defendants-Appellees.

(No. 71-92;

Third District—July 12, 1972.

*Rehearing denied September 7, 1972.*

Ralph Froehling, of Canton, for appellees.

Ross E. Morris, of Peoria, for appellant.

Mr. JUSTICE DIXON delivered the opinion of the court:

The plaintiff, Larry Burnett, was employed to build fence on a farm jointly owned and managed by the defendant Harvey Caho. The plaintiff lost his right eye while cutting a roll of steel woven wire. He contends the injury resulted from the failure of Charles Caho, the 17-year-old son of Harvey, to pay attention and hold the wire in position. After a jury trial there was a verdict in favor of plaintiff and against the employer Harvey Caho, in the amount of $50,000.00. A verdict of not guilty was returned in favor of the son Charles.

After a hearing on post-trial motions the trial judge set aside both verdicts and granted new trials, giving no reasons for his action.

Plaintiff filed a petition for leave to appeal from the order granting the new trial. Defendant Charles Caho filed a cross petition for leave to appeal. This court allowed both petitions.

■■ To properly aid this court to determine the merits of an appeal

from an order granting a new trial, particularly when there are two opposite verdicts, one of guilty and one of not guilty, the trial judge should state his reasons for his action. *Lukich v. Angeli*, 31 Ill.App.2d 20.

By Count I of his complaint plaintiff alleged that Harvey Caho and wife owned a farm in Knox County; that Harvey managed and operated the farm, and on July 23, 1969, Harvey employed workers to build a new woven wire fence on the east side of a road which went north and south through the farm; that plaintiff was one of the workers and was to be paid $2.00 an hour. On the same day defendant employed his son Charles, aged 17 and another younger boy. That the building and erection of the fence required the use of sharp-edged cutting tools, small machinery and was hazardous, requiring competent, experienced, mature workmen. That plaintiff and Charles Caho attached one end of a roll of steel woven wire to a corner post, unrolled the wire along the east side of the road to a place where a gate was intended, that plaintiff kneeled to cut the wire while Charles positioned the wire on the ground. That Charles relaxed his restraining hold, or otherwise moved to a position of simply observing plaintiff and that as plaintiff rose and completed the cutting, one of the freshly-cut wire points struck plaintiff in the right eye, destroying the sight. That plaintiff was in the exercise of ordinary care and Harvey Caho was guilty of one or more negligent acts as follows:

a. Negligently employed Charles Caho and Roy Lightbody in the fence building project when he knew, or should have known, they were immature and inexperienced respecting the hazards and dangers of the project and risk of harm to plaintiff.

b. Negligently failed to warn plaintiff of the hazard and danger incident to the cutting of the fence roll.

c. Failed to warn Charles Caho of the hazards and danger incident to the cutting of the fence roll.

d. Failed to furnish Larry Burnett with safe working conditions.

Count II was also against Harvey Caho and contained the same allegations as Count I with a further allegation that Charles Caho was the employee, agent, representative, and vice-principal of Harvey and was acting in the scope of his employment.

Count III was directed against Charles Caho alone. Harvey Caho moved to dismiss Counts I and II and was overruled. He then filed a general denial type of answer to Count I and the same to Count II except that he admitted that Charles was his employee but denied that Charles was his agent, representative and vice-principal.

Testimony showed that the three boys were engaged in building a new woven wire fence along the road as charged, that it was necessary

to unroll the tightly coiled steel wire, locate and dig post holes, and then cut twelve strands of wire to install a gate. None of the boys had previous experience and the employer had not given any of them any particular instructions or warnings. There was no one in charge. The uncoiled fence was stretched out with the end held down by a pipe. Plaintiff threw off the pipe while Charles Caho stood on the fence to hold it down, then moved away a little to enable plaintiff to raise the fence and cut the strands with heavy bolt cutters. Charles admitted he didn't keep his eyes on what plaintiff was doing and, as the last strand was cut, Charles moved off the fence allowing it to snap up and penetrate plaintiff's right eye.

Plaintiff maintains that the trial court's ruling granting a new trial was based either on an erroneous determination of law or constituted an abuse of discretion in usurping the function of the jury.

■■ We have examined the evidence in this case and find that it presents a jury question upon which reasonable men might differ. As was said in *Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 117 N.E.2d 74, at page 83:

"Certain facts may exist, which a jury of reasonable men would consider as determinative in leading to a conclusion of liability or non-liability, all according to the circumstances of the case."

Also, in the *Ney* case, at page 84, the court said:

"Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide. * * * Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions from the jury is to usurp its function."

We must next consider alleged errors of law raised by the post-trial motion of Harvey Caho who contends that the Court erred in admitting over objection:

(1) Photographs of the scene taken in January of 1970.

■■ Remoteness of time of taking the photograph from the time of the transaction, or changed conditions at the time of taking, do not necessarily render the photograph inadmissible if it can be shown by testimony that after the changes are explained, the jury will be able to understand it clearly as a correct representation and not be misled by it. Gard, Illinois Evidence Manual, Rule 336.

272

(2) In permitting the plaintiff to remove his artificial eye while on the witness stand and to testify with the eye removed while photographs of the scene were being marked and identified as being an appeal to the passions and prejudice of the jury.

■■ The possibility of causing undue prejudice is inherent in this type of evidence. But just because the demonstration is gruesome or stirring to the sensibilities and apt to produce prejudice in the minds of the jury is no reason to exclude it. The determination of the relative importance of the evidence is a matter for the sound discretion of the judge. 66 ALR2d 1334. Cleary, Handbook of Illinois Evidence, Sec. 13.9.

■■ It is common practice to display personal injuries to the jury even though there is no controversy as to the existence, nature and extent thereof. (*Minnis v. Friend,* 360 Ill. 336.) This has been held to include the right to show an injured eyeball that has been removed. (*Seltzer v. Saxton,* 71 Ill.App. 229; *Stegall v. Carlson,* 6 Ill.App.2d 388, 391.) The trial court did not commit error when it permitted the plaintiff to display his injuries to the jury and to testify briefly while so doing.

■■ (3) In permitting the employment Supervisor at Caterpillar's East Peoria plant to testify as to what the company would do regarding an application for employment by one-eyed persons and also regarding the company's handling of physically disabled employees.

We have examined the transcript of the testimony and can find no objection to or motion to strike this testimony so it is properly in the case.

(4) In permitting a witness to testify in rebuttal regarding a statement made by the plaintiff shortly after the accident, "If the boys had stood on the wire it wouldn't have flew up and hit me in the face."

■■ We are of the opinion that the testimony was admissible under the excited utterance exception to the hearsay rule. The elements of this exception, which was formerly called the *res gestae* exception were defined in *People v. Poland,* 22 Ill.2d 175, 174 N.E.2d 804: "Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflective statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence."

■■ If a narrative is actually part of the *res gestae,* it is admissible. (*Dunn v. Dunn,* 241 Ill.App. 11, 20.) The statement was made almost immediately after the accident, in ruling the trial court said, "I feel it is part of the *res gestae*—close enough."

Absolute concurrence or separation in time is not the only test and the declarations need not be precisely concurrent in point of time with the principal fact if they spring out of the principal transaction, tend to explain it, are voluntary and spontaneous and are made at a time so

near as to preclude the idea of deliberate design. 18 I.L.P. Evidence, Sec. 72.

(5) In refusing to declare a mistrial after plaintiff injected insurance into the case.

Plaintiff's right eye had been surgically removed on Aug. 13, 1969. On *Aug. 19, 1969,* one Glenn Seigal, an insurance investigator, entered plaintiff's room and took a recorded statement. The plaintiff had then been taking demerol and was, as described by his doctor, as a "little not caring".

On cross-examination, plaintiff could not remember having made the statement and the following took place:

"Q. Isn't it a fact Mr. Burnett that on *Aug. 19, 1970* you gave a recorded statement * * *.

A. Where was this recording tooken—I don't remember.

Q. You don't remember making that statement?

A. No.

Q. It was taken at Proctor Hospital about 9:10 in the morning.

A. I remember a man coming in but that is all I remember out of that.

Q. Well, do you deny making statement on that occasion?

A. That I don't know whether I did or not—I mean—

Q. You do recall talking to a man who was making a recorded statement of your conversation, don't you?

A. There was a man come in and said he was from some Insurance Company and that is all I remember about that."

The court denied a motion for mistrial and offered to give I.P.I. 2.13 to the jury but defendant did not wish to do so. Defendant later withdrew his objection to the instruction and it was given with other instructions. We feel that this was an inadvertent disclosure brought on by the persistent questioning by defense counsel. "The matter was not further dwelt upon."

■■ The reference to "some insurance company" does not seem to have been given undue emphasis or to have been made pursuant to a design or to create prejudice. On the contrary, it appears that the witness was endeavoring to answer questions truthfully and to the best of his ability. No misconduct or improper remark is ascribed to plaintiff's attorney, the trial judge was evidently satisfied that the witness had simply volunteered his remark without any obvious design or intent either on the part of the witness or his attorney to prejudice defendant. Under these circumstances the ruling of the trial court in denying the motion for mistrial was correct. *Pinkerton v. Oak Park Nat. Bank,* 16 Ill.App.2d 91; *Williams v. Matlin,* 328 Ill.App. 645; Annotation, 4 ALR

2d 761; 8 AM.Jur.2d Automobile Secs. 963, 964, 965, 966; 29 Am.Jur.2d Evidence, Sec. 404.

(6) That there was error in giving:

Plaintiff's Instruction No. 4A.

This was I.P.I. 20.01 modified to fit the allegations of the Count I of the complaint and answer.

Defendants objections consisted of arguments that there was no evidence to support the various allegations of negligence charged in the complaint.

Section 68 (4) of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 64 (4) ), provides, "If several grounds of recovery are pleaded in support of the same demand, whether in the same or different counts, an entire verdict rendered for that demand shall not be set aside or reversed for the reason that any ground is defective, if one or more grounds is sufficient to sustain the verdict; *nor shall the verdict be set aside* or reversed for the reason that the evidence in support of any ground is insufficient to sustain a recovery thereon, *unless* before the case was submitted to the jury *a motion was made to withdraw that ground from the jury on account of insufficient evidence* and it appears that the denial of the motion was prejudicial." (Emphasis supplied.) I.L.P. Trial, Sec. 316; *Moore v. Jewel Tea Co.*, 46 Ill.2d 288, 294.

■■ In order to reach particular counts of a complaint the motion must specify them and a general motion directed against the entire complaint cannot be sustained as to any particular count, even though there be no evidence to support such count. I.L.P. Trial, Sec. 115; *Fisher v. Wittler*, 285 Ill.App. 261.

■■■ Defendant further argues that "safe working conditions" was not defined in the instruction. It is not the function of an issue instruction to define each term used therein. If an instruction as given is not sufficiently full and clear it is the duty of counsel to ask for a further explanatory charge. *Yeats v. Illinois Central R.R. Co.*, 241 Ill. 205 214.

(7) Plaintiff's instruction 4B which reads as follows:

"That plaintiff, Larry A. Burnett, by Count II of his complaint, claims he was injured and sustained damages while exercising ordinary care, and that Charles Caho was negligent in one or more of the following respects:

A. Failed to restrain or hold the freshly cut wires upon completion of the cutting of the fence.

B. Failed to prevent the upward movement of the freshly cut wires following cutting of the fence.

The plaintiff further claims that one or both of the foregoing was the proximate cause of his injury.

The defendant, Harvey Caho, by Count II of his answer, denies that Charles Caho was guilty of negligence in doing any of the things claimed by plaintiff and denies that plaintiff was in the exercise of ordinary care.

The defendant further denies that plaintiff was injured or sustained damages to the extent claimed."

Defendant argues that the instruction is erroneous because there was no evidence that Charles Caho was the agent or vice-principal of Harvey Caho.

Count II of the complaint alleged that Charles Caho was the agent of Harvey Caho. The answer while denying agency admitted that Charles was an employee of Harvey.

■■■ While the words "agent" and "servant" are not wholly synonymous, yet in considering the tort liability of the "agent" and "servant" it is generally agreed that no basic or fundamental distinction is to be drawn between the liability of the principal for the tort of the agent and the liability of the master for the tort of his servant. *Dean v. Ketter*, 328 Ill.App. 206, 65 N.E.2d 572.

(8) Plaintiff's instruction No. 6A.

This was I.P.I. 21.02 Burden of Proof on the Issues modified only as to apply to Count I.

Defendant argues that it is erroneous in omitting any requirement that the plaintiff prove, (1) that he did not assume the risk or (2) that his injury was not caused by the negligent act of a fellow servant.

■■■ (1) The danger arising from the incompetency of a fellow servant is not one of the ordinary and usual hazards which an employee assumes by his contract of hiring (I.L.P. Employment, Sec. 156); nor does an employee assume a risk resulting from the employer's negligent acts or omissions. The dangers which an employee may incur in any employment fall naturally into two classes: a. The *ordinary risks* of the service—those which are not created by negligence or breach of duty on the part of the employer; and b. Those risks which are created by the employer's negligence, or *extraordinary risks*. It is often asserted without qualification that the employee does not assume the risk of the employer's negligence. (*Graham v. Mattoon City R.R. Co.*, 234 Ill. 483), and that an employee does not, merely by entering the employment, assume the extraordinary risks created by the master's negligence. *Chicago & Northwestern R.R. Co. v. Gillison*, 173 Ill. 264; *Slack v. Harris*, 200 Ill. 96, 108.

■■ It is necessary to observe that a difference exists between the assumption of ordinary risk and the assumption of extraordinary risk, if the risk is of latter kind, if the defendant wishes to rely on it, it is a

defense he must specially plead. *Huff v. Illinois Central R.R. Co.,* 279 Ill.App. 323, 330, aff'd 362 Ill. 95.

■■ An employer defending an action on the ground that the employee assumed the risk has the burden of proving that the danger was obvious and understood by the employee. *Roloff v. Lever Bros.* 263 Ill. 152.

■■ Count I of the instant complaint alleged negligence of the employer and if he wished to raise the defense of assumption of the risk he should have done so by an appropriate pleading.

■■ (2) The fellow servant doctrine has always been conditioned upon the master's having engaged competent employees, and has no application to cases in which the charges are violations by the employer of duties which he cannot delegate to another, it is likewise inapplicable where the injury resulted from the negligence of the employer and the concurrent negligence of the employer and a fellow servant. I.L.P. Employment, Sec. 133, 134, 135; *Libby, McNeill & Libby v. Scherman,* 146 Ill. 540.

We find no error in the instruction.

(9) Defendant objects to plaintiff's damages instruction No. 13A which is I.P.I. 30.01 on the ground that there was no evidence that he would experience future pain and suffering or incur future medical expenses.

■■ While it is agreed that, to warrant inclusion of the elements objected to, there must be evidence that such is reasonably certain to occur in the future, that evidence may be inferred from the nature of the disability. 25A C.J.S. Damages, Sec. 162 (9) b.

■■ If the injury is of an objective nature, the jury may draw their conclusions as to future pain and suffering from that fact alone. 22 Am.Jur.2d Damages, Sec. 299; Annotation: 115 A.L.R. 1151, 18 A.L.R.3rd 10, 39.

"The first paragraph of I.P.I. 30.01, however, specifically informs the jury that they may compensate the plaintiff only for 'any' of the elements of damages proved and the concluding paragraph of this instruction specifically tells the triers of the facts that whether 'any' of the elements of damages has been proved is for the jury to decide. This is sufficient safeguard that the amount of damages will be based on the evidence." I.P.I. Second Edition, Damages, Introduction, page 141.

Furthermore, the instruction as given, added, "Your verdict must be based on evidence and not upon speculation, guess or conjecture."

The jury could not have been misled by this instruction. *Parnham v. Carl W. Linder Co.* 36 Ill.App.2d 224.

(10) Defendant Harvey Caho also objected to plaintiff's instruction No. 27, being I.P.I. 50.01.

"As to Count II, the defendants are sued as principal and agent. The defendant, Harvey Caho, is the principal and the defendant, Charles Caho is his agent. If you find the defendant Charles Caho is liable, then you must find that the defendant Harvey Caho is also liable. However, if you find Charles Caho is not liable, then you must also find that Harvey Caho is not liable."

The ground of objection was that it assumes that Charles was the agent of Harvey.

■■ Under the state of the pleadings wherein defendant Harvey admitted in his answer that Charles was his employee we believe the instruction to be proper for the reasons heretofore given.

(11) Defendant further contends that there was error in refusing to give certain instructions tendered:

Defendants Instruction No. 1:

"When I use the phrase fellow servants I mean  *  *  *". This was a companion instruction to Defendants No. 12, and would, of course, not be proper unless Defendants No. 12 were given, since the term "fellow servants" was nowhere used in the instructions given by the court and hence needed no definition.

Defendants Instruction No. 12:

"In order for the plaintiff to recover against the defendant, Harvey Caho, the plaintiff has the burden of proving that his injury was not the proximate result of the negligence of a fellow-servant."

Under the state of the pleadings, and as discussed earlier in this opinion, this was not a proper instruction.

Defendants Instruction No. 4:

"If you find from the evidence that the plaintiff had assumed the risk as defined in these instructions then your verdict should be for the defendant Harvey Caho  *  *  *".

Defendants Instruction No. 5:

"When I use the phrase 'assumption of the risk' I mean that an employee assumes the risks of known dangers, and such as are so obvious that knowledge of their existence is fairly to be presumed."

These two instructions are not proper in a case involving the assumption of extraordinary risk as discussed earlier in this opinion.

(12) Defendant Harvey Caho also contends that there was error by the court in orally advising the jury that they had to fill in the blanks in regard to the defendant Charles Caho.

■■ The jury had selected a form of verdict involving a finding against only one defendant and they had completed the form so as to enter a verdict of $50,000.00 in plaintiff's favor and against Harvey Caho. The

form as to Charles Caho was left blank. The judge orally asked the jury to retire and see if they could fill in the blank. They then came to the verdict of Not Guilty as to Charles.

We do not believe that this brief statement by the judge amounted to a forced verdict and it clearly could not have prejudiced Harvey Caho.

The evidence in this case presents a jury question upon which reasonable men might differ. The trial court erred in vacating the verdict and ordering a new trial. The issues were properly submitted to the jury and its verdict was not contrary to the preponderance of the evidence.

Our decision makes it unnecessary to consider plaintiff's conditional appeal as to Charles Caho. The trial court's order granting a new trial as to all defendants is reversed and the judgment entered on the jury verdict is hereby reinstated.

Order granting a new trial reversed.

STOUDER, P. J., and SCOTT, J., concur.