ROBERT DUFFEK, Plaintiff-Appellant, *v.* WILLIAM VANDERHEI, Defendant-Appellee.

First District (2nd Division) No. 79-51

Opinion filed February 19, 1980.—Rehearing denied March 25, 1980.

Sandman, Levy & Moltz, of Chicago (Kerry L. Lessler, of counsel), for appellant.

Jonas, Schey & Associates, P. C., of Chicago (Robert Schey and Edwin A. Strugala, of counsel), for appellee.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Robert Duffek, filed an action against defendant, William Vanderhei, to recover for personal injuries sustained as a result of a collision between defendant's automobile and plaintiff's motorcycle. Defendant counterclaimed for property damage incurred as a result of

the collision. After a trial, the jury rendered a verdict in favor of plaintiff for the sum of $25,000, found against defendant on the counterclaim and answered negatively to a special interrogatory as to whether plaintiff was guilty of contributory negligence. Pursuant to defendant's post-trial motion, the trial court vacated the judgment in favor of plaintiff for $25,000, vacated the special interrogatory and entered judgment for defendant notwithstanding the verdict. The trial court also granted a new trial on all issues in the event that a court of review should reverse the judgment notwithstanding the verdict. Plaintiff appeals from the order entered on the post-trial motion. The questions for review are whether the trial court erred in vacating the jury verdict and special interrogatory and in entering a judgment notwithstanding the verdict and in conditionally ordering a new trial on all issues.

For the reasons hereinafter discussed, we reverse and remand the cause with directions to enter judgment on the jury's verdict.

The following evidence was adduced at trial: a collision between defendant's automobile and plaintiff's motorcycle occurred on July 2, 1973, in the intersection of Clarence Street and 21st Street in Berwyn, Illinois. The weather on the day of the occurrence was warm, dry and clear. Clarence Street is a residential, one-way street permitting only northbound traffic; 21st Street is a two-lane, east-west street in a residential area. On the day in question there were no cars parked on 21st Street, but there were cars parked on Clarence Street. The intersection of Clarence and 21st Streets is not controlled by traffic signals or signs. The speed limit on both Clarence and 21st is 25 miles per hour.

Plaintiff, Robert E. Duffek, testified as follows: On July 2, 1973, plaintiff was riding on his motorcycle when he met a friend, George Evans, and they decided to go to Cermak Plaza on Cermak Road and Harlem Avenue. Evans was also travelling on a motorcycle and his wife was riding on the back behind him. Plaintiff and Evans rode north on Austin Avenue and then turned west on 21st Street. Plaintiff then travelled west on 21st Street at approximately 25 miles per hour, and Evans followed about two car lengths behind him. When plaintiff was approximately 50 feet from the intersection of Clarence and 21st Streets, plaintiff observed defendant's automobile approaching from the south. Defendant's vehicle was at the southeast corner of the intersection, and its turn signal was activated, indicating that defendant was going to turn east. Plaintiff did not estimate the speed of defendant's vehicle. Plaintiff kept going but defendant did not turn, and the front tire of plaintiff's motorcycle hit the right rear side of defendant's car. At the moment of impact, plaintiff "flew over" defendant's car and landed on the street. Plaintiff was taken by ambulance to MacNeal Memorial Hospital where a cast was put on his right arm. Dr. Kominsky treated plaintiff at the

hospital and after the accident. A few weeks after the accident, the cast was removed and plaintiff's arm improved but remained sore. Some time thereafter, plaintiff's arm began to hurt again, so plaintiff went to Dr. Patrick Smyth at Oak Park Hospital. Dr. Smyth took X rays, and plaintiff had surgery on his arm.[1]

Plaintiff testified that at the time of the accident he was working as a mechanic earning $170 a week. Plaintiff missed 1½ to two months of work. In September 1973 plaintiff started to work at a Standard Oil station but missed eight months of work due to the accident.

Plaintiff testified on cross-examination that he applied his brakes when he reached the intersection but he did not skid. The impact occurred in the middle of the intersection. Plaintiff testified further that on March 14, 1974, while working at Standard Oil, he broke his right arm again, and Dr. Smyth treated him.

George Evans testified that on July 2, 1973, he was operating his motorcycle west on 21st Street in Berwyn. Evans was travelling at a speed of 20 to 25 miles per hour and following about three car lengths behind plaintiff. Evans observed the brake lights of plaintiff's motorcycle when plaintiff was 10 to 15 feet from the intersection; however, at that time Evans did not observe defendant's vehicle. Evans did not see the actual impact because he had turned his head to talk to his wife, who was sitting behind him on the motorcycle. After the accident, plaintiff's motorcycle was at the north curb of 21st Street, and plaintiff was near the southwest corner of the intersection.

Dr. Robert Kominsky, a certified orthopedic surgeon, testified as follows: Dr. Kominsky first saw plaintiff on July 2, 1973, at approximately 8 p.m. in the emergency room of MacNeal Hospital. Dr. Kominsky made a physical examination which revealed an injury to plaintiff's right forearm. X rays were taken which showed a fracture of the ulna on the right forearm. Dr. Kominsky applied a cast on the right arm. The cast was removed on August 24, 1973, and plaintiff's arm was put into a cloth sling; X rays taken at that time showed that the bone was healing. Dr. Kominsky saw plaintiff for the the last time on October 29, 1973, at which time plaintiff's arm was not completely healed, and Dr. Kominsky advised plaintiff to restrict activities and continue to use the sling. Based on his examinations and the X rays, it was Dr. Kominsky's opinion that the fracture was sufficiently traumatic to cause pain to plaintiff.

Dr. W. Patrick Smyth, an orthopedic surgeon, testified as follows: Dr. Smyth examined plaintiff for the first time on December 11, 1973, at Oak Park Hospital. At this time plaintiff had a long-arm cast. From his examination and from observation of X rays taken, Dr. Smyth determined

---

[1] Dr. Smyth testified that he first saw plaintiff on December 11, 1973, and that plaintiff had surgery on his arm in December 1973 and in March 1974.

that plaintiff had a nonunion or fracture that failed to unite at the midshaft of the right ulna, and that plaintiff needed surgery to bring the fragment together. Plaintiff had the surgery in December 1973 at Oak Park Hospital, and he remained hospitalized for five days. Dr. Smyth saw plaintiff on January 28, 1974, at which time the sutures were removed and plaintiff started motion therapy. On February 15, 1974, Dr. Smyth saw plaintiff and took X rays of the arm; plaintiff stated he had fallen at work. On March 19, 1974, Dr. Smyth examined plaintiff again and determined that plaintiff needed further surgery, which was performed in March 1974. It was Dr. Smyth's opinion that the previous nonunion had not healed and it was disturbed by plaintiff's fall at work and that it was the same fracture. Plaintiff was hospitalized again on May 29, 1974, at which time a portion of bone was taken from plaintiff's hip and placed in his right arm to stimulate healing. Dr. Smyth saw plaintiff for the last time on October 24, 1974, at which time plaintiff had no pain and had a good range of motion, and X rays showed a solid bone bridging across the area where there had been a fracture or nonunion. Dr. Smyth's records indicated that plaintiff was working with minimal discomfort, he had an excellent grip and slight discomfort with some rotation of the forearm. Dr. Smyth testified over defendant's objection that in his opinion the condition of plaintiff's arm in October 1974 was a permanent condition in that plaintiff would have some disability.

Plaintiff's hospital bills and doctor bills were admitted into evidence, and plaintiff rested. A motion for directed verdict made by defendant was reserved by the trial court.

Defendant, William Vanderhei, testified on his own behalf as follows: On the evening of July 2, 1973, defendant was driving his 1972 Oldsmobile 98, which was in good condition, north on Clarence Avenue. Defendant was travelling at a speed of 20 to 25 miles per hour, and as he approached the intersection of Clarence and 21st Street, he removed his foot from the gas pedal. As he reached the south curb, defendant looked to his left and his right and he observed two motorcycles on the north side of 21st Street approximately one-quarter of a block or 80 to 100 feet away. In a deposition defendant had stated that the closest motorcycle was 75 to 80 feet from the intersection. Defendant did not estimate the speed of the motorcycles. Defendant continued into the intersection at a speed of 20 miles per hour or less. When the front of defendant's vehicle was halfway past the north curbline of 21st Street, defendant felt the impact of the collision. Upon impact, defendant felt a sudden jolt forward and lost control of the vehicle, but he was not injured. The impact pushed the rear end of defendant's vehicle west, which caused it to veer to the right side of Clarence Street where the front of defendant's vehicle struck the rear end of a parked vehicle. The parked vehicle moved a few feet and struck

another parked vehicle directly in front of it. After the accident, defendant went over to plaintiff, who was at the southwest corner of the intersection; plaintiff's motorcycle was at the northeast corner of the intersection. Defendant observed a skid mark approximately 40 feet in length on 21st Street and observed debris at the point of impact. Defendant's vehicle did not leave skid marks. At his attorney's request, defendant measured the intersection from curb to curb and determined that both streets were 28 feet in width. Defendant's vehicle was approximately 18 to 20 feet in length and weighed 4000 pounds.

Richard Kostel, police officer for the city of Berwyn, testified that on July 2, 1973, at approximately 7:20 p.m, he went to the intersection of Clarence and 21st Street pursuant to a radio dispatch and found plaintiff in the street on the north half of Clarence. The motorcycle was in the north section of 21st Street just west of the center of Clarence. Officer Kostel observed debris in the north part of 21st Street and on the east part of Clarence and observed a skid mark, which he measured at 38 feet, 2 inches long, on 21st Street. Based on his prior investigations and experience, Officer Kostel concluded that the point of impact was approximately seven feet west of the east curbline of 21st Street where the debris was located and that the skid mark was made by the motorcycle because it ended where the debris was located. Officer Kostel had not inspected the pavement prior to the accident. Officer Kostel testified that the standard "average reaction time," which is the lapse between the time the brain tells the body what to do and doing it, is three-fourths of a second. Kostel did not test plaintiff or defendant as to their reaction time.

George Becker testified that he was a physical damage adjuster for an independent claim service which reviews and estimates damage on automobiles. Becker reviewed the estimate of damage to defendant's automobile and estimated the repair costs to be in excess of $900. The rear end damage was $265 and the front end damage was $700.

At the close of the evidence, defendant made a motion for directed verdict, and the court reserved its ruling. The jury rendered a general verdict for plaintiff in the sum of $25,000 and a general verdict against defendant on the counterclaim. The jury answered in the negative to a special interrogatory as to whether plaintiff was guilty of contributory negligence. Pursuant to defendant's post-trial motion, the trial court entered a judgment for defendant notwithstanding the verdict and set aside the answer to the special interrogatory as contrary to the weight of evidence. The trial court also found that the verdict for plaintiff was contrary to the weight of evidence and ordered a new trial on all issues in the event that the judgment notwithstanding the verdict was reversed on appeal.

Plaintiff initially contends that the trial court erred in vacating the jury verdict and special interrogatory and entering a judgment notwithstanding the verdict. Plaintiff contends that the questions of defendant's negligence and his own contributory negligence were properly submitted to the jury and that the trial court merely substituted its own judgment by entering the judgment notwithstanding the verdict.

It is well established that a directed verdict or a judgment notwithstanding the verdict should be entered "only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) In making this determination, the trial court may not substitute its judgment for that of the jury as to the credibility of witnesses nor may the court determine the preponderance of the evidence. (*Roedl v. Lane* (1976), 41 Ill. App. 3d 1062, 1065, 355 N.E.2d 354; *Prange v. Wallenburg* (1975), 27 Ill. App. 3d 618, 625, 327 N.E.2d 450, *appeal denied* (1975), 60 Ill. 2d 601.) Generally, contributory negligence is a question of fact for the jury. (*Orlandi v. Caraway* (1973), 9 Ill. App. 3d 628, 631, 293 N.E.2d 337.) Contributory negligence becomes a question of law only when all reasonable minds would agree that, based upon the evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, judgment in favor of plaintiff would not be permitted to stand. (*Orlandi,* at 631.) It is also established that the answer to a special interrogatory may not be set aside by the trial court unless it is contrary to the manifest weight of the evidence, which requires that an opposite conclusion be clearly evident. (*Prange,* at 622.) Accordingly, the judgment must follow the general verdict unless a judgment notwithstanding the verdict is proper under the *Pedrick* standard. *Prange,* at 623.

 Under section 11—901 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—901), when two vehicles approach or enter an intersection from differing roadways at approximately the same time, the driver of the vehicle on the left must yield the right-of-way to the vehicle on the right. However, the statute does not grant an absolute right-of-way to the driver on the right (*Relli v. Leverenz* (1974), 23 Ill. App. 3d 718, 719-20, 320 N.E.2d 169), and all drivers, regardless of who has the right-of-way, have a duty to maintain a proper lookout and to use every precaution to avoid a collision. (*Olson v. Ortiz* (1978), 60 Ill. App. 3d 787, 789, 377 N.E.2d 350; *Ferdinand v. Yellow Cab Co.* (1976), 42 Ill. App. 3d 279, 284, 355 N.E.2d 547.) The right-of-way statute must be considered with regard to both the distance and speed of the vehicles approaching the intersection. (*Relli,* at 720.) Generally, the question as to which driver has the right-of-way at an open intersection must be determined

by the jury, particularly where considerations of relative speed and distances of vehicles are involved. *Tipsword v. Melrose* (1973), 13 Ill. App. 3d 1009, 1013, 301 N.E.2d 614; *Orlandi*, at 631.

■■ ■ After reviewing the evidence in the case at bar, we find that the question of which driver had the right-of-way was properly submitted to the jury and that there is evidence, which if believed, supports the jury's verdict. Plaintiff testified that he observed defendant's automobile when he was 50 feet from the intersection, that he observed defendant's turn signal and thought defendant was going to turn right, so he proceeded through the intersection. Plaintiff testified that when he reached the intersection, he applied his brakes but hit defendant's automobile. Defendant testified that when he was at the south curb he observed plaintiff's motorcycle 75 to 100 feet away. Defendant did not deny that he had his directional light on indicating a right turn, but he testified that it was his intent to go straight. Clearly, there were questions of fact regarding the distances of the vehicles from the intersection and whether plaintiff used reasonable care in entering the intersection. Also there were questions of credibility of the witnesses, which were for the jury to resolve. Defendant points out that the collision occurred in the northeast quadrant of the intersection and that defendant's automobile was at least halfway through the intersection when the collision occurred. Defendant contends that this evidence clearly establishes that plaintiff and defendant did not reach the intersection at the same time and that, therefore, under *Relli v. Leverenz* the right-of-way statute was not applicable. In *Relli* plaintiff, whose automobile was on the left, testified that before entering the intersection he looked both ways and saw no cars and that he travelled 20 to 30 feet before impact, while defendant travelled only 10 feet. The collision occurred in the northeast quadrant of the intersection, indicating that plaintiff had travelled substantially further into the intersection than defendant. The court in a bench trial concluded that the evidence established that the parties did not reach the intersection at the same time so the statutory right-of-way was not applicable. In the case at bar defendant's testimony and the fact that the collision occurred in the northeast quadrant of the intersection indicate that defendant approached the intersection prior to plaintiff and that the statutory right-of-way was not applicable. However, although the facts of *Relli* are similar to defendant's version of the collision in the case at bar, the holding of *Relli* supports plaintiff's argument that the questions of negligence and contributory negligence were properly submitted to the jury. The court in *Relli* stated at page 719:

> "The determinative question presented to us * * * is whether there is any evidence in the record standing alone and considered to be true which would tend to prove that the plaintiff, before and

at the time of the occurrence, was exercising ordinary care for his own safety; and if so, the issue of contributory negligence is for the trier of facts who sees and hears the witnesses."

In affirming the trial court's judgment for plaintiff, the appellate court in *Relli* stated at page 721:

"It is a question of fact whether the driver exercised reasonable care in entering the intersection; and thus, in the case at bar it was for the trier of facts to determine where the truth lay."

Similarly, in *Orlandi*, the court held that evidence that plaintiff's vehicle was at least halfway through the open intersection when defendant's vehicle struck it made the question of contributory negligence one for the jury.

■■ As previously stated, a judgment notwithstanding the verdict should not be entered unless the evidence so overwhelmingly favors movant that no contrary verdict could ever stand. When the evidence is examined in a light most favorable to plaintiff, it is not clear that a verdict for plaintiff could never stand. The jury could have believed that defendant's directional light was on and that plaintiff used care in entering the intersection. Also, it could be inferred from the evidence of the skid mark that plaintiff attempted to stop and to avoid the collision when he saw that defendant was not going to turn. Since there was evidence which, if believed, supported the jury's verdict, we find that the trial court erred in entering a judgment notwithstanding the verdict.

■■ Plaintiff also contends that the trial court erred in ordering a new trial on all issues. We note initially that it is the duty of this court, if it determines that the unconditional rulings were erroneous, to review and determine the conditional ruling. Ill. Rev. Stat. 1977, ch. 110, par. 68.1(6).

It is established that the standard relating to the granting of a new trial differs from the standard for granting a judgment notwithstanding the verdict. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) On a motion for new trial, a court must weigh the evidence and a new trial will be granted if the verdict is contrary to the manifest weight of the evidence. (*Mizowek*, at 310.) A verdict is contrary to the manifest weight of the evidence only when the opposite conclusion is clearly apparent or the findings appear to be unreasonable, arbitrary and not based on the evidence. (*Murray v. Kleen Leen, Inc.* (1976), 41 Ill. App. 3d 436, 441, 354 N.E.2d 415.) A motion for new trial is addressed to the discretion of the trial court, and its decision will not be disturbed unless there is a clear abuse of discretion that affirmatively appears on the record. (*Prange*, at 626.) An abuse of discretion is shown where it appears that the trial court granted a new trial simply because it would have decided the case differently had it been the trier of fact or because it concludes that the inferences drawn by the court are more reasonable than those reached by

the jury. *Deaver v. Hickox* (1970), 121 Ill. App. 2d 465, 471, 256 N.E.2d 866, *appeal denied* (1970), 44 Ill. 2d 583.

It is true, as plaintiff contends, that a trial court should state its reasons for granting a new trial in order to aid the appellate court in determining the merits of an appeal. (*Burnett v. Caho* (1972), 7 Ill. App. 3d 266, 285 N.E.2d 619, *appeal denied* (1972), 52 Ill. 2d 597.) In the case at bar the trial court found generally that the verdict was against the weight of the evidence. However, in its discussion of the ruling, the court stated further that it was obvious to him that defendant entered the intersection first and the right-of-way statute did not apply.

■■ After reviewing the evidence we conclude that the jury's verdict is not contrary to the manifest weight of the evidence and that the trial court erred in granting a new trial. As previously discussed, there was evidence to support the jury's verdict and it was within the province of the jury to resolve the questions of fact as to the distances of the vehicles from the intersection and as to which party had the right-of-way. It appears from the record that the trial court granted a new trial simply because it would have decided the case differently had it been the trier of fact.

■■ Defendant further contends that the trial court properly granted a new trial because several errors occurred during the trial which warrant a new trial. First, defendant contends that the trial court erred in allowing Dr. Smyth to testify as to what he had observed on certain X rays, even though the X rays were not produced in court and were not available for inspection. In *Hickey v. Chicago Transit Authority* (1964), 52 Ill. App. 2d 132, 139, 201 N.E.2d 742, the court held that it is proper for an attending physician to testify as to the pathology revealed by an X ray even though he did not take the X ray; however, the X ray must be produced and put into evidence so as to furnish the basis for cross-examination. In the case at bar the testimony as to what Dr. Smyth observed on the X ray (the fracture or nonunion) was improper since the X ray was not produced at trial. However, this error standing alone would not warrant a new trial since Dr. Smyth had previously testified that his physical examination of plaintiff revealed the fracture. Thus, the improper testimony was merely corroborative.

■■ ■ Defendant next contends that the trial court erred in excluding evidence that plaintiff had filed a workmen's compensation claim in March 1974 after his accident at work, and that his disability from the accident was 27% of his arm. It is well established that evidence that plaintiff filed a workmen's compensation claim or received benefits is highly prejudicial and may not be introduced in a jury trial. (*Bryntesen v. Carroll Construction Co.* (1963), 27 Ill. 2d 566, 568, 190 N.E.2d 315; *Pozzie v. Mike Smith, Inc.* (1975), 33 Ill. App. 3d 343, 337 N.E.2d 450,

*appeal denied* (1976), 61 Ill. 2d 604.) Thus, the trial court did not err in excluding evidence of a workmen's compensation claim.

■■ ■ Defendant next contends that the trial court erred in admitting into evidence the medical bills for the subsequent injury to plaintiff's arm because no causal connection between the original injury and the subsequent injury was established. However, a review of the evidence shows that Dr. Kominsky, plaintiff's first doctor, testified that when he released plaintiff from his care, the fracture was not completely healed. Further, Dr. Smyth testified that the previous fracture had not healed and that the subsequent injury was the same fracture. Thus, there was evidence of a causal connection between the injuries, and admission of the medical bills was not erroneous. Defendant also contends that it was error for Dr. Smyth to give his opinion as to whether plaintiff had a permanent disability. The record indicates, however, that Dr. Smyth restricted his opinion of the condition of plaintiff's arm to the time he was treating plaintiff.

■■ Finally, defendant contends that the trial court erred in instructing the jury as to the statutory right-of-way since the evidence did not establish that plaintiff had the right-of-way. It is established that a party has the right to have the jury instructed on his theory of a case, and the question as to what issues have been raised by the evidence is within the discretion of the trial court. (*Tipsword v. Melrose* (1973), 13 Ill. App. 3d 1009, 1013, 301 N.E.2d 614.) Since plaintiff's theory was that he had the statutory right-of-way, the trial court did not err in giving the instruction.

Based on the foregoing, we reverse the order of the circuit court of Cook County and remand the cause with directions to enter judgment for plaintiff.

Reversed and remanded.

STAMOS and DOWNING, JJ., concur.