Kathryn Clark, Appellee, v. Richard Hasselquist et al. Richard Hasselquist, Appellant.

Gen. No. 9,473.

42

Heard in this court at the October term, 1939. Opinion filed January 25, 1940. Rehearing denied March 19, 1940.

KENWORTHY, SHALLBERG & HARPER, of Moline, for appellant; S. R. KENWORTHY and R. G. GRAHAM, of Chicago, of counsel.

HARRY E. BROWN, of Geneseo, and EDWARD L. EAGLE, of Rock Island, for appellee.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

This is a suit brought by Kathryn Clark against Richard Hasselquist, Raymond Gray and Edward Keegan to recover damages for injuries which she sustained when the automobile in which she was riding as a guest of Hasselquist came into a collision with an automobile of the defendants Gray and Keegan. The complaint consisted of one count and among other things charged that the automobile in which the plaintiff was riding as a guest on August 8, 1937 was being driven east by Hasselquist on U. S. Highway No. Six, where the highway curves to the southward, that Hasselquist was driving at an excessive rate of speed of 60 miles per hour, that the defendants Gray and Keegan were intoxicated and unable to control the automobile which they occupied, that they were driving their car very slowly or had parked their car upon the south and west or left side of the paved portion of the highway and failed to have any lights on their car in time to warn approaching cars. The complaint also averred that the plaintiff was at all times in the exercise of due care and caution for her own safety

and charged that Hasselquist had prior to the accident been drinking intoxicating liquor and was unable to control himself and properly operate his car at the time of the collision, that plaintiff had repeatedly requested her driver to be more careful and proceed more slowly but he disregarded her requests and wantonly and wilfully drove his car into the Gray and Keegan car. The defendant Hasselquist answered admitting that the plaintiff was riding with him as his guest upon the night and at the place charged, admitted that the Gray and Keegan car was in the east traffic lane as charged, that Gray and Keegan were intoxicated and unable to operate or control their car and that they failed to have lights on their car in time to warn approaching cars, denied that plaintiff was in the exercise of due care and caution for her own safety and denied the other averments of the complaint. The defendants Gray and Keegan were served with summons but made no appearance or answer. They were not defaulted but the issues made by the complaint and the answer of Hasselquist were submitted to a jury, resulting in a verdict finding Hasselquist guilty and assessing plaintiff's damages at $6,000. Upon this verdict judgment was rendered and this defendant appeals.

The evidence discloses that prior to and for some time after August 7, 1937 appellee and appellant had been keeping company and were frequently together. Appellee was 19 years of age, lived at Geneseo with her parents and on August 7, 1937 came from her home by train to Moline. By appointment appellant met her at the station about 8:30 in the evening. He was a young man 20 years of age and was driving his father's car and they went from the station to a moving picture theater and from there to the Fort Armstrong Grill, where she had a glass of ginger ale and he drank either a glass or a bottle of beer. They danced and left the hotel to drive to appellee's home about 12:30 a. m. The evening was pleasant but dark, the headlights of

their car were burning and the pavement dry. They proceeded over the Colona road to route six, a paved highway. At this intersection and before entering route six, appellant stopped his car. They then proceeded along route six over the Rock River bridge and thence eastward three-eighths of a mile. The road was straight and there was no traffic in either direction. An oak tree is located on the south side of the slab and the "Lone Oak Tavern" is located about 150 feet southwest of the Oak tree. It was near this tree where the collision occurred. About 200 feet west of the tree is the beginning of the curve in the highway to the east and just beyond the tree the pavement begins its curve to the south. The distance from the hotel in Moline to this curve is approximately 12 miles and they arrived at the curve about one o'clock a. m. As the car in which the parties hereto were riding entered the curve the lights of another car appeared directly in front of them headed west and in their traffic lane. Appellant applied his brakes but his car proceeded and there was a head-on collision between his car and an automobile in which Raymond Gray, Wanda Gray, his wife, and Edward Keegan were riding. As a result of that collision appellant was rendered unconscious and appellee sustained the injuries for which she is seeking to recover.

Appellant was familiar with this road as he had traveled it many times, as frequently as once or twice each week during the summer of 1937, to see appellee at Geneseo. According to the testimony of appellee their car crossed over the black line marking the center of the pavement as they made the sharp turn onto the Rock River bridge and she there said to appellant to "take it easy, Dick." Appellant denied this. According to the testimony of appellant he had been driving between 40 and 45 miles per hour after he left Moline and at the time of the impact between 20 and 28 miles per hour. Appellee testified that in her opinion the

instant before the collision he was driving 65 miles per hour and at the time of the impact he was going between 40 and 45 miles per hour. Wanda Gray, wife of Raymond Gray, and Edward Keegan testified on behalf of appellee to the effect that they observed appellant's car as it approached the car in which they were and in their opinion it was going 60 miles per hour. The evidence is further that the Keegan and Gray car was headed west and in the east-bound traffic lane. It was either going very slowly or had stopped. Keegan and Gray were drunk and the weight of the evidence is that the lights on their car were not burning until appellant's car was within not more than 75 feet of their car. A written statement signed by appellee was offered and admitted in evidence. It was signed by her four weeks after the accident. In this statement she said appellant, at the time of and preceding the accident, had been driving at a moderate rate of speed, that she had no recollection of seeing the other car and did not remember the collision. Other witnesses testified that appellee told them that she was resting her head on the back of the seat and was dozing and didn't know the accident had happened, that appellee had frequently stated that appellant was not to blame in any way and that the accident was not due to any fault of his. The testimony of Keegan and Wanda Gray cannot be given much credence and furthermore their evidence upon this trial was at variance with their testimony upon another trial of another case involving this same accident.

It is insisted by counsel for appellant that the court erred in permitting improper questions to be asked and answered by the witness John Buckley; that the verdict of the jury is manifestly against the weight of the evidence; that the court erred in giving to the jury appellee's second instruction and that counsel for appellee made an improper argument to the jury.

The record discloses that John H. Buckley was called as a witness on behalf of appellant and testified on direct examination to securing a statement which was signed by appellee, to which we have referred. On cross-examination the record discloses the following questions propounded to this witness and his answers thereto.

Q. Were you working for anyone September 3, 1937, when this statement was taken?

Mr. Graham: Object to that.

The Court: He may answer.

A. I was investigating the case for Kenworthy, Shallberg and Harper.

Q. Were you investigating the case at that time for anybody else?

Mr. Graham: Object to that. Immaterial.

The Court: He may answer.

A. Yes, sir.

Q. Who?

Mr. Graham: Object to that.

Mr. Eagle: We certainly have a right to show the interest of this witness in this case.

Mr. Graham: That isn't the question.

Mr. Eagle: It certainly is and we want to be heard on it. We have a right to show the interest of this witness.

Mr. Graham: I object to the remarks of counsel.

The Court: Objection overruled. He may answer.

A. Yes, Mr. Hasselquist.

Q. Anybody besides Mr. Hasselquist and Mr. Kenworthy's firm?

Mr. Graham: I object to that.

The Court: He may answer.

Q. Why do you hesitate, Mr. Witness? Can you answer that question?

A. I can answer it.

Q. Answer it.

A. The Travelers Insurance Company.

Mr. Graham: I make a motion—

The Court: You can make a motion afterwards.

Mr. Graham: I want the record to show I make a motion to withdraw a juror.

The Court: Motion denied.

Mr. Graham: And move for a mistrial.

The Court: Motion denied.

From the foregoing it appears that after Buckley had testified that he was investigating the case for appellant and for his counsel when he obtained appellee's statement on September 3, 1937, counsel for appellee persisted in asking him who else he was investigating the case for and he replied the Travelers Insurance Company. In his closing argument to the jury, counsel in commenting upon the visit of Buckley to the hospital on September 3 and the statement he that day obtained from appellee said: "He," referring to appellant, "brought this fellow (Buckley) up to help her? Oh, no, Buckley wasn't up there to get a statement that would help her in this case. He was up there to get a statement to help his employer." Counsel for appellee argue that there is nothing in this record to show that the Travelers Insurance Company was the insurance carrier in this case. If not, it was not the fault of counsel for appellee. They succeeded in apprising the jury that appellee, the plaintiff in this suit, who was severely injured as a result of this collision while riding as a guest of appellant, was interviewed by a party who was investigating the case for appellant and for his attorneys and for the Travelers Insurance Company and that his purpose in procuring a statement from appellee was to help his employer. The liability in the instant case, if any, is primarily that of appellant and it was improper and prejudicial to deliberately bring to the attention of the jury facts from which the jury could only infer that their verdict, if they found the defendant guilty, would be satisfied not by defendant but by someone else. Evidence that

defendant carries indemnity insurance protecting him from paying any judgment in an action for negligence is not admissible. *Briggs v. Golden Cream Dairy, Inc.* 298 Ill. App. 628 (Abst.); *Peterson v. Jones,* 283 Ill. App. 652 (Abst.); *Wiersema v. Lockwood & Strickland Co.,* 147 Ill. App. 33. It is true as counsel for appellee argue that they had a right to show by questions on cross-examination any and all interest of Buckley in the case which might affect the weight and credit to be given his testimony and that it is proper to show the relationship which exists between a witness and the parties to the suit, but here, after Buckley had testified that he was investigating this case for appellant and his attorneys, counsel for appellee assumed he was investigating the case for some other party not a party to this record and his answer disclosed that other party to be an insurance company. In our opinion this examination by counsel, when considered in connection with their argument to the jury, was for no other purpose than to disclose to the jury that the Travelers Insurance Company was the insurance carrier and the trial court erred in permitting counsel to pursue their inquiries after Buckley had stated that he was investigating this case for appellant and his counsel of record.

It is next insisted by counsel that the evidence does not disclose that appellant was guilty of wilful or wanton misconduct, and that the verdict of the jury in so finding is manifestly against the weight of the evidence. A wilful and wanton act may be defined as an intentional disregard for a known duty necessary to the safety of the person of another and an entire absence of care for the person of another. In *Streeter v. Humrichouse,* 357 Ill. 234 the court said: "To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and conditions, that his conduct will naturally and probably

result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness.'' Excessive speed may or may not be evidence of wilful and wanton misconduct. The determining factor is the circumstances surrounding such excessive speed and the question is as stated in *Streeter v. Humrichouse, supra,* whether under the circumstances as they appear in this record did the speed at which appellant was driving show an entire absence of care for the safety of appellee and such as exhibited a conscious indifference to consequences? The allegation of the complaint to the effect that at and before the time of the accident appellant, because of having drunk intoxicating liquor was not in control of himself or able to properly operate his automobile was not sustained by the evidence and counsel for appellee do not insist that it does. Counsel for appellee do insist however that in addition to the speed at which appellant was driving just before the collision the evidence is that as he proceeded down a hill a mile before he arrived at the point of collision he was traveling at least 45 miles per hour, that there is also evidence to the effect that appellant in making the turn as he entered the Rock River bridge crossed the black mark over into the west-bound traffic lane, that appellant must not have had his car under control or he could have stopped it after he became aware of the presence of the Keegan-Gray car or if he could not have stopped he could have avoided striking it by turning his car out of his own traffic lane.

In the instant case appellant was proceeding east in his car along a highway with which he was familiar in the country at one o'clock in the morning, the night was dark, the pavement dry, his headlights were burning, there was scarcely any traffic and only one car had been observed while he had traveled a distance of al-

most 12 miles, he was proceeding in his proper traffic lane around a long, gradual curve, there were no intersecting roads and he had the right of way and while he should have assumed that other cars might be on the highway, he did have the right to assume that traffic coming from the opposite direction would be proceeding in their proper traffic lane and would be equipped with lights as required by law. How the Keegan-Gray car came to be where it was does not satisfactorily appear from the evidence. There is no evidence that it approached from the west end of the curve. The evidence of appellant is that when he first saw the light of this car he was 50 or 55 feet away. Appellee testified that she was watching the road, looking straight ahead and saw no part of the car, that she saw a light but couldn't determine whether it was moving or still, that an instant later there was a crash and that she did not say anything after she saw the light.

We have carefully read the evidence as abstracted and examined the photographs appearing in the record and we do not believe this judgment can be sustained. Appellant may have driven carelessly but his conduct does not indicate that he was indifferent to the duty which he owed his guest. It is true that under the authorities whether appellant was guilty of wilful or wanton misconduct is a question of fact for the jury to pass upon but we are clearly of the opinion that their finding in this case is manifestly against the weight of the credible evidence in this record and the trial court erred in not granting appellant's motion for a new trial.

There was no error in giving the instruction complained of but for the errors indicated the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*