**Fred W. Schaffer and Nancy Schaffer, Plaintiffs-Appellees v. Phillip Dorsey, Defendant-Appellant.**

**Gen. No. 10,702.**

Fourth District.

May 9, 1966.

Phillips, Phebus, Tummelson, Barth & Follmer, of Urbana (Darius E. Phebus, Hurshal C. Tummelson, George G. Bryan, John T. Phipps, of counsel), for appellant.

Summers, Watson & Kimpel, of Champaign (Robert C. Summers, of counsel), for appellees.

TRAPP, P. J.

Defendant appeals from a judgment in the sum of $21,000 entered upon the verdict of a jury. The several post-trial motions of the defendant were denied.

While it is stated in the brief and argument of the defendant that, under the facts, the issue of liability was close, there is no argument presented. The defendant does not present any argument as to the judgment for damages to Nancy Schaffer entered upon the jury verdict.

An issue raised upon this appeal is whether or not the trial court erred in refusing to withdraw a juror and grant a motion for mistrial, following a reference to an unidentified insurance company during the testimony of the attending physician for plaintiff.

In the course of the direct examination, the physician was testifying to certain conditions for which plaintiff had been treated. The general subject matter of the interrogation was the ability of the plaintiff to return to his former employment with a railroad section crew, and the effect of shortness of breath and the condition

of plaintiff's upper extremities in relation to such work. The witness included in his testimony, the following:

"This I pointed out in my report. I do not know if it was to you (plaintiff's attorney), or whether it was to the insurance company, I do not know, but I pointed this out that in view of that fact I sent Mr. Schaffer to the I. C. evaluation board up at the I. C. Railroad Hospital in Chicago."

No motion to strike the answer was made but defendant's counsel asked to be heard outside of the presence of the jury. There was no request that the court instruct the jury to disregard the testimony or that the answer be stricken, but counsel moved for the withdrawal of a juror and the declaration of a mistrial. The trial court denied the motion.

We believe that the fundamental test has been stated in Williams v. Consumers Co., 352 Ill 51, 185 NE 217. In that case, a witness for the plaintiff was asked to state what he had done following an accident, to which he replied that he had reported the accident to a superior, and had been sent to the insurance company. As here, there was no motion to have the answer stricken or the jury instructed to disregard the answer, but there was a motion for mistrial. The Supreme Court opinion noted that it had found no cases granting a mistrial where the answer of a witness was inadvertent or unresponsive to a legitimate inquiry. Rather, mistrial results generally from the improper remarks or conduct of counsel which appears calculated to prejudice the jury, and the court concluded that the trial judge was satisfied that the answer of the witness was without obvious design or intent, either on the part of the witness or of the attorney, to prejudice the defendant. The record here discloses that the trial judge in this case reached the same conclusion in its ruling. In Rench v. Bevard, 29 Ill App 2d 174, 173 NE2d 1, the defendant's medical witness

volunteered the comment that he was asked to examine plaintiff and report to the insurance company, but there being no further reference to the subject, the court followed the reasoning of the Williams case. In Steward v. DuPlessis, 42 Ill App2d 192, 191 NE2d 622, the court followed the rule of the Williams case where it appeared that the trial court concluded that counsel did not seek or anticipate the unresponsive reference to the insurance company made by the witness. See also Sphatt v. Tulley, 38 Ill App2d 229, 186 NE2d 670.

A second ground for appeal urged is that the trial court erred in refusing to strike certain testimony of plaintiff's attending physician relating to the measurement of the "vital capacity" of the plaintiff following his injury. This testimony was a part of the direct examination of the plaintiff, and defendant conducted his cross-examination until he chose to conclude it. No objection was voiced by defendant's counsel concerning the testimony as to "vital capacity" during the course of direct or cross-examination. Plaintiff thereafter proceeded with a further witness and rested his case. The defendant thereupon called a witness and continued the presentation of evidence until a noon recess. Upon the resumption of the trial, defendant moved the court to strike all of the testimony of the attending physician adduced upon the subject of "vital capacity," urging as a ground therefor that the results of the test were hearsay; that there was a want of sufficient foundation for the admission of the testimony; that no report of the test was admitted into evidence for purposes of cross-examination; and that the test was subjective and made for purposes of testimony only inasmuch as it was taken some ten days or two weeks prior to the trial.

In this court, it is urged that the term "vital capacity" was extremely prejudicial in influencing the jury.

The trial court appeared to conclude that the test might be compared to an unauthenticated x-ray, but expressed

concern as to how he could instruct the jury as to the testimony at this stage of the trial. Following such colloquy, the plaintiff called as a witness the inhalation therapist employed by a Champaign hospital. It appears from the record that this witness explained the operation of the apparatus, and even demonstrated the machine and its use in the presence of the jury. The record discloses that the results of the tests are automatically recorded by the machine upon a graph or chart, and that the test chart or graph was delivered to the attending physician pursuant to the established practice in the hospital. In describing the operation of the machine during the taking of the test, there was as much cross-examination as was desired as to the methods employed, the experience of the operator, and the possibility was explored that the person taking the test might not make a maximum effort so that the question of the reliability of the test was presented to the jury.

Upon the point of reliability, it is argued that the attending physician testified that he had no knowledge of the reliability of the apparatus, but we have examined the record with considerable care and find no such testimony.

The testimony of the attending physician was that the test as to "vital capacity" relates to the interchange of air in the lungs through the maximum inhalation and exhalation of the patient. One of the results of the test is to determine the maximum capacity of the lungs to hold air. The attending physician testified that the result of the test showed plaintiff's capacity to be 2.6 liters of air, whereas the normal maximum capacity of an individual would be 3.5 or 3.6 liters, having regard to his height, weight and age. This testimony was a part of the testimony concerning the crushing of plaintiff's chest and the deformity resulting from the crushing and fractures of ribs on both sides, such being relevant, in

the opinion of the witness, to plaintiff's shortness of breath.

■ We do not believe that the trial court erred in refusing to strike the testimony. It has been generally held that an objection to testimony or a motion to strike must be timely. In Reule v. City of Chicago, 268 Ill App 266, it was held that an objection to the admission of an x-ray made after the close of the plaintiff's evidence was not timely and that it was not reversible error to admit it. In Gorden v. Gorden, 283 Ill 182, 119 NE 312, it was held that evidence must be objected to at the time it is given. See also Levy v. City of Chicago, 331 Ill App 612, 73 NE2d 643.

■ We doubt that it is proper to consider the testimony of the physician as to "vital capacity" as hearsay, as it can only be concluded from the record that the testifying doctor himself made the analysis or report of the test, and that he applied to the graph, self-recorded by the apparatus, such factors as the age, weight and height of the plaintiff to determine the measurement of capacity found. It is clear that the therapist, giving the test, did not make such analysis. It appears that the trial court determined that the testimony, as to the giving of the test and the demonstration of the machine, was an adequate authentication of the making of the test and we do not think that he erred.

■ As to the contention that there was error because no graph or chart was presented in court for purposes of cross-examination, and that the test was made in preparation for trial but limited to subjective symptoms and hence not properly admitted, no objection was made in apt time within the rule stated above.

Again, it appears that substantially the same testimony has been presented in another form without objection. Gorden v. Gorden, 283 Ill 182, 119 NE 312. One Dr. Peterson, an orthopedic surgeon, testifying to an ex-

amination of the plaintiff, stated that he had measured the chest expansion of the plaintiff and that, as measured, the chest expansion was 1.25 inches, whereas the normal chest expansion of an individual would be 2 to 4 inches. He further testified that such condition had not improved during the course of two years. Assuming as normal a minimum expansion of 2 inches, it appears that plaintiff's capacity as to chest expansion was 62 percent of normal. This appears consistent with the expressed opinion of the attending physician that the test of "vital capacity" disclosed that plaintiff's maximum lung capacity was about 65 percent of normal.

■ ■ It is urged that the use of the term "vital capacity" is highly prejudicial with the jury. No objection was made upon this point during the trial and nothing appears in the record to indicate that such is not proper terminology within the medical profession. The examining physicians, testifying in behalf of the defendant, were not asked as to the propriety of the nomenclature, and it does not appear that they made any test or examination as to chest expansion. The term "vital capacity" was described by plaintiff's physician in terms of the interchange of air in the lungs. So far as this record discloses, there was no effort to employ it as a magical incantation. While defendant's brief and argument asserts that the damages are excessive, we find no place where it is pointed out in what way the award is excessive under the evidence. The matter of excessive damages was urged during the course of the post-trial motion, but it appears that the trial court was not persuaded. We must conclude that there was no reversible error in this trial.

The judgment of the trial court is affirmed.

Affirmed.

SMITH and CRAVEN, JJ., concur.