EUGENE C. KITSCH *et al.*, Plaintiffs-Appellants, *v.* ELMER R. GOODE *et al.*,
Defendants-Appellees.

Fifth District   No. 76-172

Opinion filed April 26, 1977.

Ducey and Feder, Ltd., of Belleville (Cornelius T. Ducey, Sr., and Cornelius Thomas Ducey, Jr., of counsel), for appellants.

Wagner, Bertrand, Bauman & Schmieder, of Belleville (Robert W. Schmieder, of counsel), for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

A jury in the Circuit Court of Madison County returned verdicts of $75,000 and $25,000, respectively, in favor of plaintiffs-appellants Eugene C. Kitsch and Betty L. Kitsch in their personal injury action against defendant-appellee Elmer R. Goode.[1] Goode filed a post-trial motion alleging numerous errors, and the court granted him a new trial as to both plaintiffs. Plaintiffs timely petitioned for leave to appeal under Supreme Court Rule 306 (Ill. Rev. Stat. 1975, ch. 110A, par. 306), and we allowed the petition. The sole question on appeal is whether the trial court's action in granting the motion for a new trial was an abuse of judicial discretion.

The cause arose out of an automobile collision which occurred about 3 p.m. on December 7, 1971, at the intersection of State highway 157 and Walnut Street in Collinsville. The weather at the time was described as "misty" or "hazy." According to plaintiffs' testimony, they had turned onto highway 157, a four-lane road running generally north and south, some 210 to 220 feet from the intersection, heading south. Mr. Kitsch, who was driving, testified that he activated his left-turn signal and got into the inner lane, intending to make a left turn east onto Walnut Street. He came to a stop at the intersection and remained there for one or two minutes, with his turn signal operating and his foot on the brake, waiting for the traffic coming from the opposite direction to clear. Plaintiffs then heard a squealing of tires and defendant's car struck theirs directly in the rear, propelling it about 100 feet straight down the highway.

Defendant's account of the collision varied somewhat from that of plaintiffs. He testified that he was proceeding south in the inner lane of highway 157 at 40-45 miles per hour when plaintiffs' car, which was two or three car lengths ahead of him in the outer lane, pulled directly in front of him. Goode saw no turn signal. He hit his brakes when the Kitsch car was

---

[1] At the close of all the evidence, the court granted co-defendant Hutton Ford, Inc.'s motion for a directed verdict. Hutton Ford is not a party to this appeal, and Goode is referred to throughout this opinion as "defendant."

about 40 feet ahead of him, but the pavement was wet and he was unable to stop before skidding into the rear end of plaintiffs' car, which had not yet come to a complete stop. The parties stipulated that defendant's car left 70 feet of skid marks on the highway prior to the point of impact.

Much of the testimony at trial was directed to the extent of the plaintiffs' injuries. Eugene Kitsch was 46 years old at the time of the accident. Formerly a switchman on the railroad, he had worked as a railroad yardmaster for about 12 years. Some three months prior to the collision, he had sustained an injury to his back when a tree limb fell on him. He received outpatient treatment for this injury, and did not miss any work because of it. He was not experiencing any problem with his back at the time of the automobile accident.

Kitsch testified that he felt numb immediately after the accident. He was able to go home, but his back began to hurt and he had difficulty sleeping that night. The next day was a regular day off work. The following day, December 9, he was not able to work; instead, he reported to the Missouri Pacific Hospital, complaining of back and neck pains. He was treated by Dr. Antonio Portugal, who had X rays taken and prescribed muscle relaxants and analgesics, a back brace, and a neck collar. Kitsch wore the back brace for eight or nine months.

During the year 1972, according to Kitsch, he was unable to work a total of 34 days. In the first half of 1973, he missed another 16 days. During the remainder of 1973 and 1974, he used up all his vacation days (he was entitled to four weeks' vacation per year) on days when he was unable to work. Since May 1973 he had been under the care of Dr. Kilian Fritsch, who had prescribed certain exercises for his back. At the time of trial he was in constant pain. It sometimes took him three hours to get to sleep at night. He testified that his back had become progressively worse since the accident. His condition restricted his activities around the house. He was unable to pick up anything with any weight to it. His back pain was especially severe after long periods of sitting.

Dr. Portugal, a general surgeon, testified by deposition on behalf of Kitsch. He had diagnosed Kitsch's injuries as a cervical (neck) sprain and an aggravation of a previous thoracic vertebra injury. He took X Rays on December 9 which showed a fracture on the anterior-superior portion of the 12th vertebra. Apparently there had been a compression fracture of the same vertebra at the time Kitsch was hit by the tree limb, but it had not previously been noticed on the X rays taken at the time.

Dr. Portugal testified that he advised that Kitsch wear a back brace to maintain the spine in a fairly rigid position, and prescribed muscle relaxants. He later also prescribed a cervical collar. In August 1972, some eight months after the automobile accident, Dr. Portugal began to try to "wean" Kitsch from the back brace. He continued to prescribe muscle

relaxants and analgesics. He saw Kitsch on numerous occasions, the most recent on May 7, 1973. In his expert opinion, the injuries for which he treated Kitsch had a direct relationship to the automobile collision. The damage, he testified, was permanent; there would always be some pain because of the weakening of the back. His prognosis was "fairly good," but he said that Kitsch would have a "tendency to have midback pains off and on from here on in." His ability to work would depend on his pain threshold.

Dr. Fritsch, an orthopedic surgeon, testified on behalf of Kitsch that he first saw him on July 9, 1973, at which time he was complaining of low back and neck pains. Dr. Fritsch compared the X rays of Kitsch's back taken after the injury caused by the falling limb with those taken after the automobile accident. The difference which he found was that, in the latter X rays, a piece of bone which was merely impacted in the earlier pictures had been knocked completely off the vertebra. He testified that the automobile collision of December 7, 1971, had thrown the back alignment out, resulting in what is known as a kyphosis (backward curvature of the spine).

When Dr. Fritsch first examined Kitsch, he found a round dorsal spine with a sway back, spasm and tightness of muscles in the back, and limitation of motion in the back. There was also some limitation of motion in the neck. He recommended resumption of use of the back brace, a cervical collar, and the application of heat and massage to the neck and back. He also recommended back exercises and suggested that Kitsch use a pillow when he sits for any length of time. He prescribed muscle relaxants, valium, and equanil.

His prognosis was that Kitsch's condition would remain about the same, with continuing limitations of movement in the lower back and neck. In his opinion, there was a causal connection between the automobile collision and the conditions for which he treated Kitsch. Kitsch was incapable, according to Dr. Fritsch, of performing manual labor or doing any heavy lifting, pushing, or pulling.

Dr. Max Goldenberg, a surgeon, testified on behalf of defendant that he examined Eugene Kitsch on January 4, 1974. In his expert opinion, the automobile accident may not have aggravated the fracture of the vertebra caused by the falling tree limb. In his opinion, the difference shown in the X rays was more likely caused by Kitsch's walking around for three months after his original injury without a back brace. Dr. Goldenberg testified that Kitsch was "industrially unemployable" at the time he examined him, but he said that he based that conclusion on Kitsch's "emotional overlay," not on his physical condition.

Betty Kitsch was 39 years old at the time of the accident. She testified that she thought she was knocked out for a minute or two after the

collision. Her neck began to bother her immediately after the accident. Her family doctor referred her to Dr. Fritsch, who took X rays and in turn referred her to Dr. Edward Eyerman, a neurologist. Dr. Eyerman gave her certain medications, including injections of a cortisone-type drug into the neck, and prescribed a hard neck collar and physiotherapy. Mrs. Kitsch testified that there had been no improvement in the condition of her neck since the day of the accident. She has continued to experience headaches, neck and back pains, numbness in her arms and hands, and inability to sleep. During 1975 the condition of her back worsened, and Dr. Eyerman put her in pelvic traction. At the time of trial she was still taking medication and undergoing physiotherapy.

As in the case of Mr. Kitsch, the expert witnesses called by the parties disagreed as to Mrs. Kitsch's prognosis. Dr. Eyerman testified by deposition that he first saw Mrs. Kitsch on January 4, 1972; he diagnosed her condition as a cervical sprain. In his opinion, her neck injury was certainly related to the automobile accident; he conceded that it might well have been a reinjury of a previous cervical sprain she had suffered some 11 years earlier. He could not say whether her back problems were caused by the accident. In his opinion, Mrs. Kitsch's condition was permanent, and she would require further treatments.

Dr. George Roulhac, a neurological surgeon, testified for defendant that he had examined Mrs. Kitsch on January 25, 1974; he also diagnosed her condition as a cervical sprain (whiplash). In his opinion, however, her prognosis was excellent. He did not think that the physiotherapy treatments were necessary. He testified that if Mrs. Kitsch would take traction at home and use it properly, her symptoms would clear up, and she would suffer no disability in the future.

The trial in this case took three days. Toward the end of the first day, at the close of the direct examination of Mr. Kitsch, the mention of insurance which was the reason for the court's granting defendant's motion for a new trial was made. The context in which the remark occurred was as follows:

"Q. [plaintiffs' counsel]. Had you had X-rays taken of your body other than those that were taken at the Missouri Pacific Hospital?
A. [Mr. Kitsch]. Dr. Fritsch had me take quite a few of them.
Q. Where were those taken?
A. I have had several of them.
Q. Do you know the name of the doctor that took them?
A. I don't know if it was Azar. I believe it was Azar.
Q. Now Mr. Kitsch, in your present condition today, are you able to do a switchman's duties?
A. No. I had other X-rays taken, but that was by the insurance company."

Immediately after this unresponsive answer, defense counsel conducted his cross-examination of Mr. Kitsch. At its conclusion, he asked to approach the bench. The court then told the jury that court was adjourned until the next morning. It is not clear from the record whether the conference in chambers that ensued took place immediately, or the next morning,[2] but in the view we take of the matter, the exact timing is immaterial. We think that the motion for mistrial was timely made, and that defense counsel properly handled his objection in such a way as not to overemphasize the remark about insurance before the jury.

In chambers, defense counsel moved for a mistrial on the grounds that the mention of an insurance company not only interjected the issue of insurance into the case, but was likely to have the effect of impairing the credibility of doctors who were to testify on behalf of the defendant. Counsel for plaintiffs responded that the remark was spontaneous, unpremeditated, unresponsive, and not prejudicial. The court denied the motion on the basis of *Williams v. Consumers Co.*, 352 Ill. 51, 185 N.E. 217 (1933). However, after hearing oral arguments and considering legal authorities furnished by counsel for both parties on defendant's motion for a new trial, the court granted the motion. In response to a request from counsel for plaintiffs the court filed a "statement of reasons why the court granted the defendant a new trial." It is evident from this statement that the remark about insurance was the reason for the court's ruling.[3]

According to defendant, the reference to insurance undermined his defense that plaintiffs were not injured to the extent alleged, and led to excessive damage awards. The danger of prejudice to a defendant

---

[2] According to plaintiffs' brief, defendant's motion for a mistrial was not made until the next morning. According to defendant's brief, the motion was made before Mr. Kitsch left the stand, and while the jury members were still in their seats, but was made so softly that it fails to appear of record.

[3] The statement reads as follows: "During the trial, Plaintiff, Eugene Kitsch, made an unresponsive answer to a question by plaintiff's counsel injecting the issue of insurance into this case. Eugene Kitsch advised the jury that x-rays were taken by the insurance company's doctors. The defendant used Dr. Max Goldenberg and Dr. George Roulhac to examine Eugene Kitsch and Betty Kitsch respectively. Both of these doctors testified at trial. Not only did the issue of insurance become injected into the trial, but also it erroneously singled out Dr. Goldenberg and Dr. Roulhac as insurance company doctors. This would be a subtle and improper form of impeachment of the doctors.

While an unresponsive and inadvertent answer by a non-party which tends to disclose insurance may not necessarily be grounds for a mistrial, the courts have held that injection of insurance by a party or counsel is reversible error. (*McCarthy v. Spring Valley Coal Co.*, 232 Ill. 473, 83 N.E. 957; *Clark v. Hasselquist*, 304 Ill. App. 41, 25 N.E.2d 900; *Carlson v. Hulsey*, 69 Ill. App. 2d 236, 215 N.E.2d 831.) Here the remark about insurance was made by the Plaintiff, Eugene Kitsch, himself. The Court in its discretion finds that the remark was prejudicial and influenced the jury. The verdict reflects passion and prejudice on the part of the jury and is against the manifest weight of the evidence and also was excessive. The Court further finds the Defendant, Elmer Goode, was denied a fair trial. Defense counsel made a timely objection and moved for a mistrial and the Court erred in denying the mistrial."

thought to be inherent in bringing to the attention of a jury the fact, or the supposed fact, that the defendant is protected by liability insurance has been commented upon many times by courts of review in Illinois. Our supreme court reiterated the traditional rule against the disclosure of insurance coverage in *Kavanaugh v. Parret*, 379 Ill. 273, 40 N.E.2d 500 (1942):

> " * * * [I]t is improper to inform the jury, either directly or indirectly, that the defendant is insured against liability on a judgment that may be entered against him in the trial of the case. * * * Whether the defendant has someone to help him pay a judgment, if one is rendered against him, has nothing to do with the case on trial, and to bring it into the lawsuit is to import an influence having nothing to do with the merits of the case and designed only to aid the plaintiff at the expense of the defendant. * * * " 379 Ill. 273, 277-78, 40 N.E.2d 500, 502; see also *e.g., Carlson v. Healey*, 69 Ill. App. 2d 236, 215 N.E.2d 831 (2d Dist. 1966); *Pinkerton v. Oak Park National Bank*, 16 Ill. App. 2d 91, 147 N.E.2d 390 (1st Dist. 1958).

■■ With the passing of years, however, and the almost universal prevalence of automobile liability insurance, has come an increasing judicial tolerance towards references to insurance. Where a finding of liability has a complete basis in the evidence and the damage award is reasonable, the courts will conclude that the jury was not prejudiced by the remark. (*Sheley v. Guy*, 63 Ill. 2d 544, 348 N.E.2d 835 (1976); see also *Sphatt v. Tulley*, 38 Ill. App. 2d 229, 241, 186 N.E.2d 670, 675 (1st Dist. 1962): "the presence of an insurance carrier no longer rings the prejudicial note which it did thirty years ago"; and see cases cited in McCormick, Evidence §201, n. 16, at 481 (2d ed. 1972).) The leading commentators have long had little but disdain for the attempt to shield jurors from the fact of insurance: Dean Wigmore called the traditional rule "a piece of hypocritical futility"; Dean McCormick thought it "a hollow shell." (2 Wigmore, Evidence §282a, at 146 (3d ed. 1940); McCormick, Evidence §201, at 481 (2d ed. 1972).) As McCormick says, "it seems likely today that in nearly all cases the jury will either be informed of the fact of insurance or will consciously assume that the defendant is so protected." (McCormick §201, at 481.)

We need not here, of course, reach any conclusion as to the continued viability, in any case, of the rule against disclosure of the fact of insurance coverage. As we read the relevant cases the Illinois rule is that a mistrial is not appropriate where the subject of insurance is introduced by an isolated inadvertent or unresponsive reference by someone other than plaintiff's counsel, with no apparent intent to prejudice the defendant. (*Williams v. Consumers Co.*, 352 Ill. 51, 185 N.E. 217 (1933); *Heiser v.*

*Chastain,* 6 Ill. App. 3d 552, 285 N.E.2d 601 (2d Dist. 1972); *Burnett v. Caho,* 7 Ill. App. 3d 266, 285 N.E.2d 619 (3d Dist. 1972); *Cupp v. Nelson,* 5 Ill. App. 3d 37, 282 N.E.2d 513 (1st Dist. 1972); *Schaffer v. Dorsey,* 70 Ill. App. 2d 390, 217 N.E.2d 19 (4th Dist. 1966); *Rench v. Bevard,* 29 Ill. App. 2d 174, 173 N.E.2d 1 (3d Dist. 1961).) This rule seems to be in accord with the weight of authority in other jurisdictions. Annot., 4 A.L.R.2d 761, 764 (1949); McCormick, Evidence § 201, at 480-81 (2d ed. 1972): "The witness often is unaware of the conspiracy of silence about insurance and makes with utmost naturalness a reference to this all-pervading fact. The reference will be striken on request but is usually not a ground for mistrial or reversal."

■■ In *Williams v. Consumers Co.,* 352 Ill. 51, 185 N.E. 217 (1933), originally relied on by the trial judge in the instant case when he denied defendant's motion for a mistrial, the driver of the car in which plaintiff was injured gave an unresponsive answer to a question of plaintiff's attorney which mentioned insurance. The supreme court distinguished the case before it from those

> " * * * where improper remarks and questions of an attorney have been asked a witness with the apparent purpose of informing the jury that an insurance company, rather than the party sued, would be liable for any damages assessed. We have examined these cases but find none where a mis-trial has ever been granted on account of an inadvertent or unresponsive answer of a witness to a legitimate inquiry. Generally, where prejudicial error has been declared it is found to have been due to some misconduct or improper remarks or questions of counsel, oft-times repeated, and calculated to influence or prejudice the jury." (352 Ill. 51, 55, 185 N.E. 217, 219.)

After discussing some of the older cases, the court in *Williams* continued:

> "These and the other cases cited by defendant on this point are therefore to be distinguished from the case before us, where no misconduct or improper remark is ascribed to plaintiff's attorney, and where the trial judge was evidently satisfied that the witness had simply volunteered his unresponsive remark concerning the insurance company without any obvious design or intent, either on the part of the witness or the attorney, to prejudice defendant. * * *" 352 Ill. 51, 56, 185 N.E. 217, 219.)

*Williams* has not been overruled, and we think that it is controlling on the issue before us. We have examined the cases cited by the trial judge in his "statement of reasons" and by defendant in his brief. In each of those cases, it was *plaintiff's counsel* who made the reference to the existence of insurance, and in each the reviewing court either found that counsel's remark was deliberate, or indicated its skepticism about the alleged

"inadvertence" of the remark. See *Jordan v. Morrissey,* 130 Ill. App. 2d 418, 264 N.E.2d 734 (1st Dist. 1970); *Carlson v. Healey,* 69 Ill. App. 2d 236, 215 N.E.2d 831 (2d Dist. 1966); *Reed v. Johnson,* 55 Ill. App. 2d 67, 204 N.E.2d 136 (2d Dist. 1965); *Clark v. Hasselquist,* 304 Ill. App. 41, 25 N.E.2d 900 (2d Dist. 1940); *McCarthy v. Spring Valley Coal Co.,* 232 Ill. 473, 83 N.E. 957 (1908).

In this case, however, plaintiffs' attorney made no reference to insurance. Nor do we think that it could reasonably be inferred that counsel deliberately elicited Kitsch's apparently unresponsive remark about other X rays taken by "the insurance company." No contention was made at trial that the remark was anything other than part of a good faith attempt to answer his attorney's legitimate inquiry. Defense counsel took the position that any reference to insurance, inadvertent or not, was *per se* grounds for a mistrial. Given the context in which the remark was made, and the fact that it was not further dwelt on, it would be far-fetched to conclude that the jury automatically associated the unidentified insurance company with defendant or his doctors. Plaintiffs' counsel did nothing to engender that association, either by further questioning of the witness or by argument to the jury. This somewhat cryptic reference to an unnamed insurance company could well have been taken to mean Kitsch's own medical insurance carrier. The remark was, we think just as unprejudicial to the defendant as Kitsch's earlier response, to the question whether his car was repaired after the accident, that "the insurance company said it was totaled."

Defendant states in his brief that he could find no cases in which a trial court's decision to grant a new trial because of the mention of insurance was reversed on appeal. Our research has revealed one similar case,[4] *Burnett v. Caho,* 7 Ill. App. 3d 266, 285 N.E.2d 619 (3d Dist. 1972), where the trial court granted defendant a new trial without giving any reason for his action. Among the errors alleged in defendant's post-trial motion to necessitate a new trial was the refusal of the court to declare a mistrial after plaintiff injected insurance into the case.

In the *Burnett* case, plaintiff's eye had been surgically removed only six days before an insurance investigator came into his hospital room to take a recorded statement. At that time, plaintiff had been taking pain-killing drugs, with the result that at trial he had difficulty in remembering having made the statement when questioned about it on cross-examination. After counsel told plaintiff that the statement to which he referred was taken at the hospital at a certain hour, the following exchange occurred:

---

[4] In any event, of course, we would not hesitate to reverse an order of a trial court which we found to be contrary to the law, without regard to whether or not this or any other reviewing court had previously been presented a case in precisely the same posture.

"A. I remember a man coming in but that is all I remember out of that.

Q. Well, do you deny making a statement on that occasion?

A. That I don't know whether I did or not—I mean—

Q. You do recall talking to a man who was making a recorded statement of your conversation, don't you?

A. There was a man come in and said he was from some insurance company and that is all I remember about that."

In reversing the order granting a new trial, the appellate court said, as to this issue:

"The court * * * offered to give I.P.I. 2.13 ['Whether a party is insured has no bearing whatever on any issue that you must decide. You must refrain from any inference, speculation, or discussion about insurance.'] to the jury but the defendant did not wish to do so. Defendant later withdrew his objection to the instruction and it was given with the other instructions. We feel that this was an inadvertent disclosure brought on by the persistent questioning by defense counsel. 'The matter was not further dwelt upon.'

The reference to 'some insurance company' does not seem to have been given undue emphasis or to have been made pursuant to a design or to create prejudice. On the contrary, it appears that the witness was endeavoring to answer questions truthfully and to the best of his ability. No misconduct or improper remark is ascribed to plaintiff's attorney, the trial judge was evidently satisfied that the witness had simply volunteered his remark without any obvious design or intent either on the part of the witness or his attorney to prejudice defendant. * * *" (7 Ill. App. 3d 266, 273, 285 N.E.2d 619, 625.)

We think that these remarks are equally applicable in the instant case.

■■ Defendant contends that the damages awarded to plaintiffs were excessive, reflecting passion and prejudice on the part of a jury alerted to the presence of liability insurance. It has long been the law in Illinois that the amount of a verdict is largely within the discretion of the jury. (*Lau v. West Towns Bus Co.*, 16 Ill. 2d 442, 452 158 N.E.2d 63, 69 (1959), and cases cited.) This does not mean, of course, that a jury's determination of damages "transcend[s] the power of review." (*House v. Stocker*, 34 Ill. App. 3d 740, 746, 340 N.E.2d 563, 567 (3d Dist. 1975).) Our obligation is to scrutinize the record to determine whether the total amount of the verdicts "falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience." (*Hedrich v. Borden Co.*, 100 Ill. App. 2d 237, 251, 241 N.E.2d 546, 553 (1st Dist. 1968).) We have made such a scrutiny of this record and do not find either

award to be outside reasonable limits of compensation for the injuries sustained. We cannot substitute our judgment as to the proper amount to be awarded for that of the jury. *Ball v. Continental Southern Lines, Inc.*, 45 Ill. App. 3d 827, 360 N.E.2d 81 (5th Dist. 1976); *Kapelski v. Alton & Southern R.R.*, 36 Ill. App. 3d 37, 343 N.E.2d 207 (5th Dist. 1976).

■■ Defendant also raises on this appeal other alleged errors which he contends had the cumulative effect of denying him a fair trial.[5] The first error alleged is that the court should not have denied co-defendant Hutton Ford's motion for summary judgment, only to grant its motion for directed verdict at the close of all the evidence, which was the same as that presented by affidavit in support of summary judgment. The purpose and effect of keeping the corporate defendant in the case, according to defendant, was to convey to the jury a "deep pocket" impression. As we have already held that the damages awarded by the jury were not excessive, we need not discuss this argument except to note that we think it obscures the difference between the requirements for granting summary judgments and directed verdicts. Compare section 57(3) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57(3)) with the *Pedrick* rule (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967)).

■■ · The other allegations of error are the court's giving over objection a proximate cause instruction which included the first bracketed sentence of IPI Civil No. 15.01 (2d ed. 1971), and permitting certain X rays and a bottle of medication to be taken into the jury room. Assuming *arguendo* that the court did err in each of these instances, we think it is clear that the alleged errors, taken together, did not rise to the level of denying defendant a fair trial. Considering the evidence presented, we conclude that the alleged errors would not justify overturning the jury's verdict. See *Kapelski v. Alton & Southern R.R.*, 36 Ill. App. 3d 37, 343 N.E.2d 207 (5th Dist. 1976); *Gertz v. Bass*, 59 Ill. App. 2d 180, 208 N.E.2d 113 (1st Dist. 1965).

■■ Although a trial court has a broad discretion in the granting of new trials (*Couch v. Southern Ry. Co.*, 294 Ill. App. 490, 14 N.E.2d 266 (4th Dist. 1938)), such action is nevertheless reviewable for abuse. (*Dobson v. Rosencranz*, 81 Ill. App. 2d 439, 226 N.E.2d 296 (3d Dist. 1967).) This court said recently in *Stringer v. McHugh*, 31 Ill. App. 3d 720, 334 N.E.2d

---

[5] We note that among the trial court's reasons for granting a new trial was that defendant "was denied a fair trial." In any event, on an appeal such as this it is settled that "[t]he reason stated in the order for granting a new trial is not controlling, and when the whole record is brought up on appeal defendant should be allowed to urge any ground upon which it relied in the lower court to sustain the order or judgment." *McNulty v. Hotel Sherman Co.*, 280 Ill. App. 325, 331 (1st Dist. 1935); see also *Panepinto v. Morrison Hotel, Inc.*, 71 Ill. App. 2d 319, 218 N.E.2d 880 (1st Dist. 1966); *Commonwealth Bldg. Corp. v. Hirschfield*, 307 Ill. App. 533, 30 N.E.2d 790 (1st Dist. 1941); *Rowoldt v. Cook County Farmers Mutual Insurance Co.*, 305 Ill. App. 93, 26 N.E.2d 903 (1st Dist. 1940).

311 (5th Dist. 1975), in reversing an order for a new trial, that a jury's verdict should not be disturbed by the trial court unless it is unreasonable, arbitrary, and unsupported by the evidence. Neither the trial court nor the appellate court should sit as a second jury to consider the nuances of the evidence or the demeanor and credibility of the witnesses. Granting a new trial merely because the trial court would have reached a different result, where there is evidence which if believed would support the jury's verdict, is an abuse of discretion. *Deaver v. Hickox,* 121 Ill. App. 2d 465, 256 N.E.2d 866 (4th Dist. 1970); *Roth v. Lissner Iron & Metal Co.,* 88 Ill. App. 2d 352, 232 N.E.2d 534 (1st Dist. 1967).

We do not think that the verdicts in this case were unreasonable, arbitrary, or unsupported by the evidence. The finding of liability had a complete basis in the evidence and the damages awarded were within reasonable limits. (*Sheley v. Guy,* 63 Ill. 2d 544, 348 N.E.2d 835 (1976).) We therefore conclude that the court below abused its judicial discretion in granting defendant's motion for a new trial.

For the foregoing reasons, the order of the Circuit Court of Madison County granting defendant Elmer Goode a new trial is reversed.

Reversed.

EBERSPACHER and G. MORAN, JJ., concur.