Brenda **FALKOWSKI** and Edward Falkowski, Plaintiffs,

v.

Lemuel A. **JOHNSON**, and S.C.L. Construction, Inc., Defendants.

Civ. A. No. 91–490 MMS.

United States District Court, D. Delaware.

April 15, 1993.

John M. Bader of Tomar, Simonoff, Adourian & O'Brien, Wilmington, DE; David M. Jakobi, Paoli, PA, of counsel, for plaintiffs.

Robert K. Pearce of Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, DE, for defendants.

OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

Defendants, Lemuel A. Johnson and S.C.L. Construction, Inc., have moved pursuant to Rule 59 of the Federal Rules of Civil Procedure for a new trial or alternatively for remittitur. Docket Item (D.I.) 34. After a three day trial, the jury returned a verdict of $250,000 for plaintiff Brenda Falkowski and $10,000 for her husband, plaintiff Edward Falkowski. D.I. 31. A new trial will be ordered by reason of inappropriate comments of plaintiffs' lead counsel during his closing summation. Accordingly, the motion for remittitur will not be addressed.

I. Facts

Plaintiff Brenda Falkowski was injured in an automobile accident. She filed a complaint against the driver of the other vehicle, Mr. Johnson, and his employer, S.C.L. Construction, Inc. D.I. 1. In its answer, S.C.L. Construction conceded respondeat superior liability, D.I. 5 at ¶ 7, and both defendants later admitted liability. D.I. 19. In his opening address defense counsel conceded Mrs. Falkowski suffered some compensable injury. The only issue remaining for trial was damages. In addition, Mr. Falkowski had a claim for loss of consortium. The motion for new trial is grounded solely upon improper remarks by plaintiffs' lead counsel during closing argument.

During trial plaintiffs' lead counsel for tactical reasons not then clear brought to the jury's attention that he was not from the State of Delaware.[1] Plaintiffs' counsel began his closing statement by amplifying his out-of-town status:

Now, you are already aware that I do not normally practice in the State of Delaware. I practice in Chester County, Pennsylvania, which is really, I hope, only regarded by you as a suburb of Wilmington. Since so many of you are citizens here, live or come to work here in Wilmington, please do not regard me as a stranger. I am representing one of your own here. I hope that you will give the people that I represent the same kind of hearing that you would give someone who is represented solely by local counsel. I please ask that you not allow it to in any way interfere with your consideration of this case that I am not normally practicing in Wilmington.

. . . . .

You may also find that because, in small ways, there is some variances between the procedures and practices in courts that I normally practice, the Court may need to remind me on occasion that there are certain things that I should pay attention to. Again I would ask your indulgence. It is not out of any ill intent on my part. But, instead, I may have different patterns and practices, and there are habits that become ingrained. I am sure all of you appreciate how habits can compel our behavior when we want to try and be otherwise.

D.I. 33 at 2–3.

After turning to the substantive matters of the case, plaintiffs' counsel began his explanation of the defendants' respective interest in the case. With respect to S.C.L. Construction, Inc., counsel stated, "I do want you to know something, and it is very important. S.C.L. Construction didn't care enough about this case to have anyone present." D.I. 33 at 7.

Having implied that S.C.L. Construction, Inc., was not interested in the case, plaintiffs'

1. Lead counsel was associated with local counsel pursuant to Local Rule 83.5(d), but local counsel, pursuant to request, was excused from attendance at trial.

counsel immediately explained his view of defense counsel. Plaintiffs' counsel stated,

> I want to call your attention to some sleights of hand that can occur in a case, because some sleights have occurred here. There is an art of advocacy. Sometimes you notice it and sometimes you don't. A very good magician, you never notice the tricks of hand that he has, but he has them, or he wouldn't be able to perform magic. [Defense counsel], on several occasions, has called your attention to one area to keep you from looking to where he is performing his magic.

D.I. 33 at 7.

In explaining to the jury the admission of liability by both defendants, plaintiffs' counsel then addressed Mr. Johnson's status. Counsel stated,

> Now, normally I would get instructions from the Judge explaining why S.C.L. is liable. Well, there are a couple of reasons. One is because their employee did this while he was in the employ of S.C.L. And S.C.L. is responsible for all [Mr. Johnson's] actions.
>
> Don't waste a lot of sympathy thinking that I am going to be pursuing Mr. Johnson after this trial, because you can't get blood out of a stone. I hope you give me credit with more intelligence than to pursue somebody out of which I can obtain no damages.

D.I. 33 at 8. At this point, defense counsel objected and plaintiffs' counsel stated, "Excuse me, Your Honor. I will withdraw that if you wish. A caution, you may do so." *Id.*

As a caution, the Court explained,

> Members of the jury, there has been a lot said thus far. And [defense counsel] has been very patient because one attorney does not like to object to another during summation. I am going to ask you to keep your eye on the ball during summations, and keeping your eye on the ball means where the attorneys are directly addressing the evidence and the inferences that can be drawn from that evidence, and nothing else.

D.I. 33 at 8.

The issue of insurance arose directly in the closing argument when plaintiffs' counsel re-ferred to the plaintiffs' own insurance. During trial, plaintiffs' counsel in an unorthodox move elicited from plaintiff that she had been reimbursed for her medical special damages by her insurance carrier. In closing argument he revisited the subject. Plaintiffs' counsel stated,

> Now, plaintiffs' damages include several areas. And the Judge, His Honor, will instruct you on what those areas of damages are. Those areas of damages include the medical bills that Brenda has incurred. And there are reasons for that. The defendants cannot benefit from the foresight of a plaintiff in obtaining things such as insurance to cover their loss. That is not supposed to benefit the defendant.

D.I. 33 at 13. Again, defense counsel objected. Plaintiffs' counsel responded by stating, "I think that is proper argument. But I don't know about this jurisdiction." *Id.* The Court replied, in turn, that the argument was not proper in this jurisdiction and, in response to plaintiffs' counsel's request for a curative instruction stated,

> Members of the jury, whether there is insurance in this case or there is not is of no relevance to what you are to determine. You are to determine the amount of damages that the plaintiffs are entitled to. Similarly, there has been much said about the absence of S.C.L. I urge you to keep your eye on the ball. I do not know what that has to do with damages.

*Id.*

Finally, near the conclusion of his closing statement, plaintiffs' counsel stated,

> You know, I think that [defense counsel] has shown that, in the way he has presented evidence, a suggestion through the evidence that, you know, you heard the doctor testify that there are subjective complaints here, subjective complaints there, that perhaps Brenda doesn't suffer from pain or suffer from pain as badly as she says she does. He seems to have a very high tolerance for pain in others. But that suspicion, which is probably a product of his work in representing people such as the defendants in this case, I suggest that that suspicion should be—

D.I. 33 at 18. Again, defense counsel objected. The Court, however, found the statements to be argument and not an attack on defense counsel. *Id.* Once more, before the jury plaintiffs' counsel explained, "There are customs in my jurisdiction that differ. Forgive me." *Id.*

II. Discussion

Addressing motions for new trials, the United States Court of Appeals for the Third Circuit has stated,

At the outset, we recognize that not all improper remarks will engender sufficient prejudice to mandate the granting of a new trial. Our test is whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements. Often ... a combination of improper remarks are [sic] required to persuade us of prejudicial impact.

*Fineman v. Armstrong World Industries, Inc.,* 980 F.2d 171, 207 (3d Cir.1992) (citation omitted) (quoting *Draper v. Airco,* 580 F.2d 91, 94 (3d Cir.1978)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993).[2] To gauge the prejudicial effect of any improper assertions, the appellate court has rested analysis of motions for retrial not necessarily on "individual instances or types of impropriety", but has looked instead to "the argument as a whole." *Draper,* 580 F.2d. at 97.

In considering a motion for retrial, particular attention must be paid to whether "counsel's closing argument to the jury introduces *extraneous matter* which has a reasonable probability of influencing the verdict." *Ayoub v. Spencer,* 550 F.2d 164, 170 (3d Cir.) (emphasis added), *cert. denied,* 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977). *See also Reed v. Philadelphia, Bethlehem & New*

*England R.R. Co.,* 939 F.2d 128, 133 (3d Cir.1991) ("The prohibition against use in argument of evidence not in the record is straightforward."). The prohibition of extraneous matter is confirmed by the pertinent Rules of Professional Conduct upon which the Court of Appeals has also relied in motions for retrial. *See, e.g., Fineman,* 980 F.2d at 208 (relying upon the New Jersey Rules of Professional Conduct). The particular rule in this case prohibits even an allusion to irrelevant or inadmissible matters. Delaware Lawyers' Rules of Professional Conduct, Rule 3.4(e) ("A lawyer shall not ... in trial allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence....").[3] In applying these standards, the Court finds that because extraneous matters were introduced by plaintiffs' counsel during closing arguments, and those extraneous matters were reasonably probable to prejudice the jury, defendants' motion for retrial will be granted.

In determining which, if any, statements may have had a prejudicial effect, the Court first considers if "counsel's closing argument to the jury introduce[d] extraneous matter...." *Ayoub,* 550 F.2d at 170. The only issue at stake in this trial was the amount of damages suffered by the plaintiffs. Despite the solitary issue for trial, in his closing statement, plaintiffs' counsel impugned both defendants and defense counsel on irrelevant grounds. Plaintiffs' counsel indicated that S.C.L. Construction, Inc., was an uninterested party and instructed the jury not to "waste a lot of sympathy thinking that I am going to be pursuing Mr. Johnson after this trial, because you can't get blood out of a stone. I hope you give me credit with more intelligence than to pursue somebody out of which I can obtain no damages." D.I. 33 at

---

2. Federal Rule of Civil Procedure 59, under which defendants have brought this motion, states, in part:

A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....
Fed.R.Civ.P. 59(a).

3. Plaintiffs' lead counsel in this case is not a member of the Delaware Bar, but has been admitted pro hac vice. D.I. 4. As such, counsel agreed to submit "to the disciplinary jurisdiction of this Court for any alleged misconduct which occurs in the course of ... this action...." D.I. 4. Rule 83.6(d)(2) of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware incorporates "the Rules of Professional Conduct adopted by the Supreme Court of the State of Delaware."

8. In addition, plaintiffs' counsel remarked on defense counsel's "high tolerance for pain" as a result of "representing people such as defendants in this case". D.I. 33 at 18.

Who would pay the judgment is irrelevant to the sole issue of damages. Whether plaintiff would be forced to squeeze "blood out of a stone" or would be able to recover from some other source has no bearing on the amount of damages. That subject matter had no place in this trial. Similarly, whom defense counsel frequently represents has no relevance to the issue of damages suffered by plaintiffs. It follows plaintiffs' counsel did introduce extraneous matter into his closing statement.

A finding that extraneous matter found its way into the trial in plaintiffs' closing statement does not end the matter. The Court must next determine if it is reasonably probable that those comments prejudiced the jury. Harmless extraneous matter would not be grounds for retrial. Defendants forcefully argue the statements, while not directly saying so, were calculated to lead the jury to conclude that defendants' insurance carrier, not defendants, would be paying the damages awarded to plaintiffs. The Court agrees. This is best illustrated by plaintiffs' counsel's comment that the jury not "waste a lot of sympathy thinking that I am going to be pursuing Mr. Johnson after this trial, because you can't get blood out of a stone. I hope you give me credit with more intelligence than to pursue somebody out of which I can obtain no damages." D.I. 33 at 8. Defendants also point to the description of S.C.L. Construction, Inc., as an uninterested party when plaintiffs' counsel explained, "I do want to note something, and it is very important. S.C.L. Construction didn't care enough about this case to have anyone present." D.I. 33 at 7. While stated separately in summation, when taken together these two comments alone tell the jury that some entity other than the defendants would pay the judgment. This effect was compounded by directly introducing insurance, albeit plaintiffs' insurance.

The implication that insurance was involved was also furthered by counsel's remarks concerning defense counsel's "high tolerance for pain" as a result of "representing people such as defendants in this case". D.I. 33 at 18. Such comments, combined with statements explaining the lack of interest in the case on the defendants' parts, would lead a dispassionate listener to the inevitable conclusion that defendants had insurance coverage. Looked at in isolation, any one of these comments could be considered harmless. Together, however, they combine to present a reasonable probability that the jury learned by reason of closing argument of plaintiffs' counsel that an insurance company would pay any award the jury might make.

A jury would, within reasonable probability, inflate the amount of the award if it had reason to infer that an insurance company rather than defendants would pay an award. Indeed, the probability of jury prejudice when insurance coverage has been introduced was one of the reasons behind the prohibition of liability insurance as admissible evidence. The Advisory Notes to Rule 411 of the Federal Rules of Evidence [4] explain the exclusion of liability insurance due to the fear "that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds." The rationale behind the exclusion of insurance from evidence also applies to closing arguments of counsel.

The United States Court of Appeals for the Second Circuit has recognized the danger whenever liability insurance coverage is referred to by an attorney. In facts analogous to this case, plaintiff's attorney told the jury that neither the defendant, nor the defendant's father, had any financial interest in the case. *Cuccarese v. Soloman,* 405 F.2d 866 (2d Cir.1969) The appellate court found the "remarks of plaintiff's counsel clearly implied that defendant had insurance to cov-

---

4. Rule 411 of the Federal Rules of Evidence states:
   Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness. Fed.R.Evid. 411.

er a judgment rendered against him." *Id.* at 867. The court explained, "A reference by counsel to insurance coverage is ground for a mistrial unless it is made for a legitimate purpose." *Id.* (citations omitted). *Cf. Adams Lab., Inc. v. Jacobs Eng'g Co.,* 761 F.2d 1218, 1226–27 (7th Cir.1985) ("[T]o constitute reversible error, references to insurance coverage must be 'due to some misconduct or improper remarks or questions of counsel, oft-times repeated, and calculated to influence or prejudice the jury.' ") (quoting *Kitsch v. Goode,* 48 Ill.App.3d 260, 6 Ill.Dec. 17, 22–23, 362 N.E.2d 446, 451–52 (1977)).

As the Second Circuit Court of Appeals and the Advisory Committee to the Federal Rules of Evidence both recognize, reference at trial to liability insurance coverage may work to prejudice a jury in its deliberations. Here, by alluding to insurance coverage in his closing statement, plaintiffs' counsel brought in extraneous material which had nothing to do with the amount of damage suffered by plaintiff. The only purpose had to be to influence the jury to inflate the award. These allusions, especially in the closing minutes of the trial, makes it reasonably probable that the jury had been prejudiced.

█ Plaintiffs argue that any prejudice which may have occurred was cured by the Court's instructions to the jury. In considering motions for retrial, the Third Circuit appellate court has indicated that a curative instruction from the court is not necessarily sufficient "to remove the probability of prejudice." *Draper,* 580 F.2d at 97. In this case, the only instruction aimed at eliminating the implication of insurance coverage occurred only after the mention of plaintiff's insurance. The comments which claimed that the defendants had no interest in the case were not followed by instructions to ignore the potential of defendants' insurance coverage. Indeed, if the court were to have mentioned defendants' liability insurance in a cautionary instruction, it could have made matters worse, not better. *See, e.g., Cuccarese,* 405 F.2d at 867 ("The judge's instruction ... that the jury should not consider defendant's ability to pay a judgment in reaching its verdict may have made the situation worse by re-minding the jury of prior references to insurance."). Moreover, because the implication of insurance coverage arose over the entire course of the closing statement, it is difficult to see how any curative instruction would suffice.

Finally, any curative effect of the Court's instructions was mitigated by the plaintiffs' counsel's oft-repeated statements that he might make mistakes because of his out-of-state status. By explaining on more than one occasion that he usually practiced in another jurisdiction where certain rules are different, plaintiffs' counsel implied what he was doing was acceptable in other jurisdictions, thereby causing the jury to believe he would be permitted to bring out the fact of defendants' insurance coverage if he were in another district. The jury would then all too easily attribute the errors of plaintiffs' counsel to his out-of-state status, and would be less inclined to follow the Court's instructions. In short, by pre-excusing certain portions of his conduct he deflected the brunt of attempted corrective action by the Court.

In summary, plaintiffs' counsel so effectively planted his comments that by the end of his summation any reasonable juror could not have avoided the strong suspicion, if not conviction, that defendants' insurance carrier would pay any award the jury might make to plaintiffs. Equally troubling is the generalized personal attack on defense counsel's integrity without reference to any specific facts. Plaintiffs' counsel dubiously asserts that conduct such as he exhibited occurs in the jurisdiction in which he practices. Regardless of the accuracy of counsel's questionable assertions, it is not the norm in the Delaware District or the Delaware state courts. Unless and until higher authority orders otherwise, the Court will not permit civility in the courtroom to descend to the lowest common denominator.

An order will issue granting defendants a new trial.