**Rochelle RAMOS, Plaintiff,**

v.

**COUNTY OF SUFFOLK and Alfred Tisch, in his official capacity as Suffolk County Sheriff, Defendants.**

No. 07–cv–1250 (ADS)(ETB).

United States District Court,
E.D. New York.

April 26, 2010.

Jon Norinsberg, Esq., PLLC, by Jon L. Norinsberg, Esq., Bennitta L. Joseph, Esq., of Counsel, New York, NY, for plaintiff.

Suffolk County Attorney's Office, by Assistant County Attorney Arlene S. Zwilling, Assistant County Attorney Susan A. Flynn, Hauppauge, NY, for defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This case arises out of allegations by plaintiff Rochelle Ramos that a physician's assistant at the Suffolk County jail sexually assaulted her while she was incarcerated in that facility. The matter was tried before a jury, and the jury returned a verdict in favor of the defendants. The plaintiff now moves for (1) a partial direct-ed verdict in her favor pursuant to Fed. R.Civ.P. 50(b), and (2) a new trial pursuant to Fed.R.Civ.P. 59. For the reasons set forth below, the Court denies the plaintiff's Rule 50(b) motion and grants the plaintiff's Rule 59 motion.

## I. BACKGROUND

Plaintiff Rochelle Ramos asserts that on December 29, 2005, while she was an inmate at the Suffolk County Correctional Facility in Riverhead, NY, a physician's assistant named Gary Feinberg sexually assaulted her during a routine medical examination. Feinberg died in March of 2006. On March 23, 2007, Ramos brought the present 42 U.S.C. § 1983 action for damages against Feinberg's estate, the County of Suffolk, the Suffolk County Sheriff's Office, and Alfred Tisch, the Suffolk County Sheriff. After discovery was concluded, all of the defendants moved for summary judgment. The claims by Ramos against Feinberg's estate and the Suffolk County Sheriff's Office were dismissed by order of this Court dated September 8, 2009. However, her claims against Suffolk County and Tisch survived. These remaining causes of action asserted derivative liability against Suffolk County and Tisch, based on an alleged municipal policy or practice that lead to the assault. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

On November 9, 2009, the plaintiff proceeded to a jury trial against Suffolk County and Tisch, seeking to prove that (1) Feinberg had assaulted the plaintiff, and (2) the defendants had a policy or practice that led to this assault. The parties began the trial process by selecting a jury and arguing motions in limine, and during this time, and the Court issued three rulings relevant to the plaintiff's present motion.

In the first of these rulings, the Court permitted the defendants to amend a previous Local Rule 56.1 statement in which the defendants admitted that Feinberg had in fact assaulted Ramos. Prior to moving for summary judgment, the defendants had filed a statement of facts "as to which [they] contend[ed] there is no issue to be tried." This statement of facts included the admission that "[o]n or about December 28, 2005, Ramos was subjected to a sexual assault by Gary Feinberg, who was working as a Physician's Assistant in the Medical Unit at the jail." (Def.'s Rule 56.1 Stmt., ¶ 3.) A footnote referred to the assault as "alleged." (*Id.*) When the Court highlighted this statement just prior to jury selection, the defendants asserted that this admission was accidental, and that they had intended to refer to the assault at all times as "alleged." Over the plaintiff's objection, the Court accepted the defendants' explanation, and permitted them to revoke this material admission.

Second, the plaintiff moved to exclude at trial all evidence of her substantial history of drug abuse. The Court found that evidence of the plaintiff's drug use impacted the plaintiff's claim for emotional distress damages, but that this was the only issue for which this evidence would be admissible. In so ruling, the Court explicitly held that the plaintiff's drug history would not be admissible for the purpose of impeaching the plaintiff's credibility. (Tr. at 21:4–5 ("Here, [the drug use history] has nothing to do with credibility. That's out.").) The Court also warned the defendants' counsel not to refer to the plaintiff's drug use except with regard to the issue of emotional distress damages.

Third, the plaintiff moved to exclude evidence that she had been arrested for making a false statement to the police. The Court ruled that the *fact* of the arrest was admissible because it affected the plaintiff's claim for emotional distress damages, but that the *reason* for the arrest was not admissible. Thus, the Court ruled, "I'm going to let you cross-examine her on, have you ever been arrested before this and after this, and not go into what the reason for the arrest is." (Tr. at 14:6–9.)

At the trial, the plaintiff offered her own testimony recounting Feinberg's assault in support of her allegation that it took place. In addition, her testimony was corroborated by:

1) notes from Gary Feinberg confirming that he examined her on the day of the alleged abuse, (Pl.'s Tr. Ex. 48);

2) the plaintiff's own sworn complaint of the assault, dated the day after it took place, (Pl.'s Tr. Ex. 21);

3) a report by the Suffolk County Sheriff's Office Internal Affairs Section, stating that a medical exam "revealed an irritation to [the plaintiff's] right vaginal area," and that Ramos's complaint against Feinberg was "founded", (Pl.'s Tr. Ex. 22);

4) a detailed sworn statement by Suffolk County jail inmate Tunisia Ivory, alleging that Feinberg sexually assaulted her approximately two weeks before he allegedly assaulted the plaintiff, (Pl.'s Tr. Ex. 28);

5) a detailed sworn statement by Suffolk County jail inmate Linda Kennedy, alleging that Feinberg sexually assaulted her approximately two weeks after he allegedly assaulted the plaintiff, (Pl.'s Tr. Ex. 29);

6) typed notes from the Suffolk County Sheriff's Office recording that another Suffolk County jail inmate, Marie Catterson, made a similar allegation during the same period of time, (Pl.'s Tr. Ex. 32); and

7) testimony at trial by Lowrita Rickenbacker, a former inmate at Suffolk County jail, alleging that Feinberg sexually abused her from February 2005 through January 2006, (Tr. at 952:7–14).

Significantly, no evidence was admitted at the trial that conflicted with the plaintiff's testimony that the sexual assault by Feinberg took place.

In addition, during the plaintiff's testimony at trial, evidence of the plaintiff's drug history came in both during her direct examination and cross-examination on the issue of damages. Also, counsel for the defendants questioned the plaintiff at some length concerning the alleged false statement she had made to the police. However, the plaintiff never admitted to making a false statement to the police, and consistent with the Court's ruling, the arrest itself was never introduced to impeach the plaintiff's denial. While defense counsel represents to the Court that she recalls that the plaintiff *did* admit at trial to filing the false report, no such evidence appears in the trial transcript, and this representation is thus unavailing.

After both parties rested, each presented their closing statements. Defense counsel argued in summation, among other things, that Ramos had not proven that Feinberg assaulted her. Counsel questioned the "tone" of the plaintiff's written complaint, and pointed out that it was unusual that Ramos recalled certain details from the assault, such as the physical condition of Feinberg's shoes and the fact that officers outside the exam room were eating jalapeño-flavored potato chips. Defense counsel also argued that it was suspicious that Ramos did not complain about the assault until the day after it happened, even though she had several opportunities before then to speak with various correctional officers.

Then, defense counsel made two additional statements to challenge the plaintiff's allegation of assault, to which the plaintiff now objects. First, despite the Court's ruling that the plaintiff's drug use was admissible only on the issue of damages, defense counsel exhorted the jury to consider the plaintiff's drug use in assessing liability, stating:

Why didn't [the plaintiff] make an outcry [about the alleged abuse]? I think there is a clue in this evidence as to why she didn't. Because she said Gary Feinberg said to her, be a good girl. I'll get you some medication. I'll make it easier for you. And you know what, ladies and gentlemen? She's an admitted drug addict and that could be why she didn't say a word.

(Tr. at 1372:7–12.)

Shortly thereafter, defense counsel told the jury that the plaintiff had recently filed a false statement with the police, in spite of the fact that no evidence supported that allegation. Noting that the plaintiff had submitted her sworn description of Feinberg's alleged assault, defense counsel then stated:

Well, you know what we know about Ms. Ramos? She's a person who files false statements with the police. She walked into a police station not long ago and filed a false report about being robbed, and it was not true.

(Tr. at 1380:5–8.) Again, no such evidence was adduced at the trial.

On November 24, 2009, the jury returned a verdict, answering only the first question on the verdict sheet. That question read:

### PRELIMINARY QUESTION

1. Did the plaintiff Rochelle Ramos prove that she was sexually abused by

Physician's Assistant Gary Feinberg on December 29, 2005?

YES _____ NO _____

If your answer to question 1 is "NO", you have found a verdict in favor of the defendant in both causes of action. In that event, cease deliberations, the foreperson should sign and date the Verdict Sheet and advise the Court by note that you are ready to return to the courtroom to announce your verdict.

The jury answered "NO" to this question, and thus answered no other questions and found a verdict in favor of the defendants.

On December 23, 2009, the plaintiff made the present motions for judgment as a matter of law and for a new trial. The defendants oppose both motions.

## II.  DISCUSSION

### A.  As to the Plaintiff's Rule 50(b) Motion

The plaintiff asserts that, pursuant to Fed.R.Civ.P. 50(b), the Court should rule as a matter of law that Feinberg assaulted her. The plaintiff presents two bases for this motion: First, she contends that defendants should be held to their admission in their Rule 56.1 statement that the assault occurred. Second, she claims that the evidence at trial overwhelmingly supported the conclusion that Feinberg assaulted her. The defendants respond that the plaintiff's motion is both procedurally improper and substantively deficient.

### 1.  Legal Standard

Rule 50(a) provides that, prior to submission of a case to a jury, a court that "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [a given] issue," may enter judgment as a matter of law on that issue. Rule 50(a)'s language thus permits a party to make a motion for judg-

ment as a matter of law prior to submission of the case to the jury, and Rule 50(b) provides that a party may renew this motion after a verdict. Rule 50 does not permit a party to move for judgment as a matter of law for the first time after a verdict has been entered.

Nevertheless, the Second Circuit has created an exception to this general rule, holding that a court "may grant judgment as a matter of law where no Rule 50 motion was made, if necessary to prevent 'manifest injustice.'" *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir.2003) (citing *Pahuta v. Massey–Ferguson, Inc.*, 170 F.3d 125, 129 (2d Cir.1999); *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 164 (2d Cir.1998)). The cases have provided little guidance on what constitutes "manifest injustice" in this context, but rather appear to focus on the specifics of each fact pattern. *Id.*

### 2.  Application

█ The defendants argue that the plaintiff is precluded from now making a motion pursuant to Rule 50 because she failed to so move prior to the submission of the case to the jury. While both parties agree that the plaintiff did not move for judgment as a matter of law until after the jury returned its verdict, the plaintiff contends that she may nevertheless make the motion at this time. The Court agrees. As discussed above, the Second Circuit has held that a failure to move for judgment as a matter of law prior to submission to the jury is not a per se bar to a later motion for the same relief. Nevertheless, the plaintiff's failure to timely move for judgment as a matter of law does require the Court to apply a higher standard. *See Stephenson*, 332 F.3d at 68. Thus, the Court may not grant the plaintiff's motion unless it is required to avoid "manifest injustice." *Id.*

With respect to the substance of the plaintiff's Rule 50(b) motion, the plaintiff first contends that the defendants are bound by their prior admission that Feinberg assaulted her. As discussed above, the Court previously permitted the defendants to amend their Rule 56.1 statement in which this admission appeared, and the Court declines to reverse this ruling. Thus, this basis for the plaintiff's motion is without merit.

■ The Court gives greater consideration to the plaintiff's argument that she is entitled to judgment as a matter of law because the overall weight of evidence at trial requires it. The plaintiff correctly notes that her testimony describing Feinberg's alleged assault was uncontradicted, and that the record contains her sworn statement complaining of the assault the day after it took place. As discussed above, the record also contains evidence of an injury to the plaintiff's vagina, as well as several other similar complaints by other women against Feinberg, all made within in a short time span.

Nevertheless, the Court is wary of the Second Circuit's admonition that, in determining a Rule 50 motion, a court "must give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses...." *Kinneary v. City of New York,* 601 F.3d 151, 155 (2d Cir.2010) (quoting *Brady v. Wal-Mart Stores, Inc.,* 531 F.3d 127, 133 (2d Cir.2008)). In the Court's view, the jury's verdict strongly indicates that they did not find the plaintiff to be credible, and the Court is hesitant to intrude on this determination by entering judgment that directly contradicts such an express finding. Based on a review of all the facts and arguments the Court finds that there will be no "manifest injustice" if the plaintiff's motion is denied. Accord-

ingly, the Court denies the plaintiff's Rule 50 motion.

## B. As to the Plaintiff's Rule 59 Motion

The plaintiff also moves for a new trial in this matter based on the her assertions that, among other things, (1) no evidence contradicted the plaintiff's allegation of assault, and (2) defense counsel made improper remarks during summation.

### 1. Legal Standard

Rule 59 provides in pertinent part:

(a) In General.

(1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:

> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court

■ Generally, the grant of a new trial under Rule 59 is warranted only if the district judge is "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Sorlucco v. New York City Police Dept.,* 971 F.2d 864, 875 (2d Cir.1992) (quoting *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 370 (2d Cir. 1988)). In evaluating a Rule 59 motion, the trial judge's duty is essentially to see that there is no miscarriage of justice. *Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir.1978). As stated in *DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 133 (2d Cir.1998), "As a general matter, '[a] motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice.'" *Id.* (quoting *Song v. Ives Labs., Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992)).

In comparison to a Rule 50 motion, the Second Circuit has held that the standard for a Rule 59 motion is less onerous for the moving party in two ways: first, "[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *DLC Management Corp.*, 163 F.3d at 134. Second, in deciding a Rule 59 motion "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Id.*

### 2. Application

The Plaintiff first moves for a new trial on the same basis that supported her Rule 50 motion. That is, she asserts that the weight of the evidence in support of her allegation of assault requires that her Rule 59 motion be granted. The Court declines to grant a new trial solely on this basis for substantially the same reason that it declines to grant the plaintiff's Rule 50(b) motion: the jury is entitled to disbelieve the plaintiff. However, in the Court's view, the fact that substantial extrinsic evidence supported the plaintiff's testimony provides the background for the plaintiff's second basis for seeking a new trial.

This second basis is essentially that, while the jury may be entitled to disbelieve the plaintiff, the defendants may not urge the jury to disbelieve the plaintiff *for improper reasons*. According to the plaintiff, this is what defense counsel did here, and the plaintiff asserts that defense counsel's improper comments ultimately affected the jury's verdict. On this issue, the Court agrees with the plaintiff.

■ The first instance of this improper conduct, recounted more fully above, was defense counsel's statement that connected the facts of the alleged assault with the plaintiff's history of drug abuse. Counsel did this by stating, "And you know what, ladies and gentlemen? She's an admitted drug addict and that could be why she didn't say a word [about the alleged abuse]." (Tr. at 1372:7–12.)

To be sure, the Court finds defense counsel's comments cryptic, as they appear possibly to admit that the assault did in fact take place. However, no close analysis of the text is necessary to determine that defense counsel plainly asked the jurors to consider, one the one hand, what actually happened during Feinberg's examination, and on the other hand, the fact that the plaintiff "was an admitted drug addict." This contradicted the Court's express ruling that evidence of drug use was not admissible on the issue of liability or credibility, and was therefore improper.

■ Second, defense counsel asked the jury to discount the value of the plaintiff's sworn testimony, saying, "you know what we know about Ms. Ramos? She's a person who files false statements with the police. She walked into a police station not long ago and filed a false report about being robbed, and it was not true." (Tr. at 1380:5–8.) As noted above, there was no evidence in the record that the plaintiff had filed any false police reports. This statement is thus considerably more troubling to the Court, as it directly impeaches the plaintiff's credibility without any evidentiary basis.

■ The Court notes that counsel for the plaintiff did not object to either of these statements at the time they were made, and that the Second Circuit generally reviews such unpreserved objections only for "plain error." *See Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 18 (2d Cir.1996). Thus, while the defendant's statements were plainly improper, the threshold of harm necessary for a new trial is heightened here.

■ Nevertheless, the Court finds that this threshold has been met. First, defense counsel's statements here showed an audacious disregard both for the Court's rulings and for the evidentiary record, and brought out the inflammatory issues of the plaintiff's drug abuse and criminal history. Moreover, the great weight of the extrinsic evidence here supported the plaintiff's allegation, and there was *no* evidence that contradicted her. Thus, in the Court's view, there is a strong connection between (1) defense counsel's improper argument that plaintiff should be disbelieved on the basis of her drug history and alleged prior false statements to the police, and (2) the fact that the jury found the plaintiff not credible. The Court can identify few reasons from the record for the jury to have disbelieved the plaintiff, and thus finds it very likely that defense counsel's improper statements affected the jury's decision to discredit the plaintiff's testimony. As such, the Court finds that defense counsel's statements were "so serious and flagrant [as to go] to the very integrity of the trial." *Id.* (quoting *Brenner v. World Boxing Council*, 675 F.2d 445, 456 (2d Cir. 1982), cert. denied, 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982)); *see also, Falkowski v. Johnson*, 148 F.R.D. 132, 135 (D.Del.1993) (holding that an attorney's presentation to the jury of arguments not supported by facts in evidence can warrant a new trial).

In addition, the Court notes that its decision to grant the plaintiff a new trial is also supported on separate grounds. At the trial, the plaintiff sought to bolster her testimony that Feinberg had assaulted her by calling Suffolk County Investigator Terry–Clark, the investigator who on December 30, 2005 took the plaintiff's statement complaining of the assault. The plaintiff's counsel asserted that Terry–Clark would have testified to the plaintiff's demeanor at the time, and also offered into evidence documents from her investigation file supporting the claim that the assault took place.

When the plaintiff attempted to call the investigator, the defendants objected to her testimony because she was not listed in the parties' joint pre-trial order. The plaintiff admitted that the witness was unlisted, but asserted that she was omitted in reliance on the defendants' now-revoked admission that the assault actually took place. The plaintiff asserted that, given that the defendants had now withdrawn this admission, the investigator's testimony should be permitted to prove the assault took place.

Ultimately, the Court declined to allow the plaintiff to call the investigator, primarily because counsel's offer of proof at the time revealed that the investigator's testimony was not obviously relevant. However, in hindsight, the Court finds that this conclusion may have been unwarranted. While the plaintiff's counsel provided little detail as to what the investigator could say to bolster the plaintiff's testimony, it is reasonable to believe that the investigator—and the investigation file she would have placed into evidence—may well have supported the plaintiff's claim. Especially in light of the fact that the plaintiff claimed that she would have listed the investigator as a witness had the defendants not admitted to the assault at the time the parties filed the pre-trial order, the Court finds that the exclusion of the investigator's testimony caused unfair prejudice to the plaintiff. While the Court is uncertain that this incident would have supported a grant of a new trial by itself, the Court finds that the incident does support the Court's present Rule 59 decision.

Thus, the Court grants the plaintiff's Rule 59 motion for a new trial.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiff's motion for judgment as a matter of law pursuant to Rule 50(b) is denied; and it is further

**ORDERED** that the plaintiff's motion for a new trial pursuant to Rule 59 is granted; and it is further

**ORDERED** that the parties are directed to appear for jury selection on June 28, 2010 at 9:00 a.m.

**SO ORDERED.**